**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jit Singh NAGRA, Defendant–Appellant.**

**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Mohan Singh NAGRA, Defendant–Appellant.**

**Nos. 97–30105, 97–30106.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 2, 1998.

Decided June 8, 1998.

---

Anna–Mari Sarkanen, Seattle, Washington, for defendant-appellant Jit Singh Nagra.

Lenell Nussbaum, Seattle, Washington, for defendant-appellant Mohan Singh Nagra.

Helen J. Brunner, Assistant U.S. Attorney, Seattle, Washington, for plaintiff-appellee.

Before: ALARCON and HAWKINS, Circuit Judges, and BREWSTER, District Judge.*

BREWSTER, District Judge:

Brothers Jit Singh Nagra and Mohan Singh Nagra each appeal from sentences imposed following remands from this court. Appellants pled guilty to separate but virtually identical two-count informations charging (1) conspiracy to defraud the United States and the Immigration and Naturalization Service in violation of 18 U.S.C. § 371 and (2) encouraging or inducing the illegal entry or residence of an alien in violation of 8 U.S.C. § 1324(a)(1)(D)(1988). In prior appeals, this court vacated Appellants' sentences and remanded because the trial court had imposed departures without articulating sufficient supporting factual findings. On remand, Appellants moved to withdraw their guilty pleas. The trial court denied their motions, made findings, and re-imposed the original sentences. Appellants timely appealed.

We have jurisdiction over these appeals pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. We are asked to review (1) the district court's denial of Appellants' motions to withdraw their guilty pleas, (2) the district court's factual finding that each Appellant smuggled at least 180 aliens, and (3) the sentences imposed. We affirm in part, reverse in part, and remand for resentencing.

## I. Introduction

Appellants were arrested in September 1994 at the conclusion of a sting operation

---

* The Honorable Rudi M. Brewster, District Judge for the Southern District of California, sitting by designation.

directed at alien smuggling. In January 1995, they agreed to plea bargains on the above-mentioned two-count informations. The conspiracy count charges conspiracy to defraud the United States and the Immigration and Naturalization Service by violating 8 U.S.C. § 1324(a)(1)(A-D) [alien violations], 18 U.S.C. § 1546(a) [counterfeiting immigration documents], 18 U.S.C. § 201(c)(1)(A) [giving gratuity to government official], 31 U.S.C. § 5324 [structuring financial transactions so as to evade reporting requirements], and 18 U.S.C. § 1956(a)(2)(B)(i) [money laundering].

The factual bases in the informations set forth, *inter alia*, that between 1985 and 1994, Appellants joined and participated in a conspiracy to smuggle an unspecified number of Pakistani and Indian nationals into the United States and to perpetuate their stay by illegally purchasing immigration documents from public officials.

A magistrate judge received the guilty pleas and found that the pleas were "supported by an independent basis in fact containing each of the essential elements of the ... offenses." Guilty pleas were also accepted from Jit Nagra's wife and Appellants' father pursuant to separate plea agreements offered in a package deal. Appellants filed no objections to the magistrate judge's recommendations, and the district court accepted their guilty pleas.

Separate Presentence Reports ("PSR"s) prepared in April 1995 for each Appellant calculated guideline ranges of incarceration of 63–78 months, based on total offense levels of 26 and criminal history categories of I. Probation recommended six-level upward departures on the grounds that the smuggling conspiracy either had the ability to, or actually did bring, thousands of aliens into the United States.

At the first sentencing proceeding, the district court reduced Appellants' offense levels by three for acceptance of responsibility, reducing their sentencing guideline ranges to 46–57 months. To support the recommended upward departures, the government reiterated its belief that the conspiracy involved several thousand aliens (the government's sentencing memorandum suggests as many as 10,000 or more), that some aliens were subjected to dangerous or inhumane treatment, and, as to Jit Singh Nagra, that he carried a firearm. No evidence was taken. The district court agreed that upward departures of six levels were appropriate "for the reasons set forth in the presentence report" and imposed sentences of 96 months. Appellants appealed.

On appeal, the Nagras challenged only the fact and extent of the district court's upward departures. In an unpublished disposition, the panel found that the district court failed to determine the number of aliens involved in the smuggling operation and to explain the basis for its upward departures. Accordingly, the panel "remand[ed] so that the court can make a finding on the approximate number of aliens smuggled in the conspiracy" and instructed the district court to explain the extent of any departures, analogizing to other provisions of the Guidelines and to append to the presentence reports a finding of fact on the approximate number of aliens smuggled in the conspiracy.

On remand, the government filed a new sentencing memorandum that included a summary of tape recordings made by INS agents during the course of their investigation. The government provided Appellants with transcripts of the tape recordings themselves. Upon reviewing the transcripts, Appellants discovered that the transcripts did not support assertions made in the summary of the tape recordings as to the number of aliens smuggled by Appellants.

The government then abandoned the use of the evidence from the tapes, and instead submitted a revised sentencing memorandum supported by transcripts of grand jury testimony. Based on this evidence, the government requested a finding that "the testimony of witnesses before the grand jury accounts for at least 180 people who were seeking to enter the United States with the help of defendants during the period from August 1989 through the summer of 1994."

In view of their discovery about the tape recordings, Appellants moved to withdraw their guilty pleas. Appellants argued that the informations to which they pled guilty were based substantially on an affidavit simi-

lar to the faulty summary, and that they would not have pled guilty if the unedited transcripts had been available. Appellants also challenged the guilty pleas on other grounds that will be addressed below. The district court reviewed the motions under the "fair and just reason" standard used for presentence motions to withdraw guilty pleas. The Court denied the motions, finding that there was adequate evidence to support the guilty pleas on all counts and that any exculpatory material previously withheld by the government was not material to the plea.

At resentencing, the court found that "[t]he approximate number of aliens smuggled in the conspiracy which can be attributed to each defendant is at least 180" and "substantially exceeds 100." On that basis, the Court reimposed six-level upward departures so that "the sentences of Jit Singh Nagra and Mohan Nagra shall remain the same." The court sentenced each defendant to 96 months of incarceration, three years of supervised release, and $100,000 fines. The Nagras then filed the instant appeals.

## II. Motions to Withdraw Guilty Pleas

Appellants challenge the district court's denial of their motions to withdraw their guilty pleas. Appellants argue that government misrepresentations and withholding of evidence "favorable" to Appellants prior to their plea violated their due process rights under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and that their pleas were defective. We reject their arguments and affirm the trial court's denial of their motions to withdraw their guilty pleas.

### A. No Manifest Injustice Caused by Denial of Motions

■ On appeal, this court reviews for an abuse of discretion a district court's denial of a motion to withdraw a guilty plea. *See United States v. Alber,* 56 F.3d 1106, 1111 (9th Cir.1995). The district court properly considered Appellants' motions to withdraw their guilty pleas under the "fair and just reason" standard set forth in Fed.R.Crim.P. 32(e). While this standard generally is applied liberally, a more stringent standard is appropriate in cases, including those before us, in which a defendant seeks to withdraw a guilty plea on remand when reversal did not undermine the validity of the conviction. Such an attempt is " 'akin to that of a defendant who seeks to withdraw his plea after sentencing.' " *United States v. Ramos,* 923 F.2d 1346, 1358 (9th Cir.1991) (applying post-sentencing standard to defendant whose co-defendant had already been sentenced) (quoting *United States v. Kay,* 537 F.2d 1077, 1078 (9th Cir.1976) *(per curiam )* (same)). A guilty plea cannot be withdrawn after sentencing unless a "manifest injustice" would result. *United States v. Baker,* 790 F.2d 1437, 1438 (9th Cir.1986).

■ There can be no manifest injustice in refusing to permit a defendant to withdraw a guilty plea when there is no serious contention that the defendant is innocent of the crimes charged. *See Id.* (rejecting an appeal of a denial of a motion to withdraw plea where the defendant contended that "he was led to plead guilty by a recklessly erroneous or willfully false statement by the prosecutor that six or seven witnesses would testify as to [defendant's] drug activities" because there is no manifest injustice in allowing a plea to stand if the defendant does not seriously assert his innocence.)

■ In these cases, there is no evidence that any misrepresentations concealed any evidence whatsoever that Appellants were in fact innocent of the crimes charged in the informations. *See Tate v. Wood,* 963 F.2d 20, 24–25 (2d Cir.1992) (withheld evidence may have proved defendant's self-defense claim); *Miller v. Angliker,* 848 F.2d 1312, 1322–23 (2d Cir.1988) (withheld evidence indicated defendant's innocence).

There has been no serious suggestion that either Appellant is innocent as to the first count, conspiracy. The government need not have proven at trial all of the alleged objects of the conspiracy, such as the illegal financial transactions. *See United States v. Castro,* 887 F.2d 988, 993 (9th Cir.1989). Even if Appellants did not personally execute some of the acts of the conspiracy, they remain vicariously liable as co-conspirators.

As to the second count, Mohan Nagra argues that "the evidence previously withheld by the government is more than sufficient to undermine confidence that [he] smuggled Amrik Singh into the United States, and that he conspired to structure financial transactions or to launder money." Even if withheld evidence showed that Mohan Nagra was not directly involved in either the particular smuggling of Amrik Singh or in the financial transactions, the existence of such evidence does not show that Mohan Nagra "would have refused to plead and would have gone to trial." *Sanchez v. United States,* 50 F.3d 1448, 1454 (9th Cir.1995). It is clear that Amrik Singh was in some way brought in, transported, concealed, harbored, or shielded by the Nagra conspiracy. Singh testified to the grand jury that he entered the United States with the help of a woman named Marlena, who told him that Mohan Nagra "works with me, we work together." The second count of the information charged "inducing or encouraging" and "aiding and abetting," crimes to which Appellants cannot seriously claim innocence in view of their prior admissions. Therefore, an argument that Appellants did not themselves smuggle Amrik Singh is unavailing.

The *Brady* allegations in these cases do not involve information unavailable to Appellants without disclosure. *Cf. Campbell v. Marshall,* 769 F.2d 314, 317–324 (6th Cir. 1985) (*Brady* material presumed where defendant was not informed that gun was found on victim; however, violation was insufficient to invalidate guilty plea). As the trial judge aptly noted when denying the motions, "what is interesting to me is if in fact the government was saying things that weren't factually correct, there was nobody in a better position than [the Nagras] to tell their counsel what the true facts were.... [Instead, they] stood up and raised [their] right hand[s] and swore before God that it was true that [they] had committed the crimes in the information." The record is replete with evidence of Appellants' guilt on both counts, including numerous admissions. Because there is no material contention that Appellants are innocent of either of the counts as charged, no manifest injustice is rendered by the denial of their motions to withdraw their guilty

pleas. Therefore, the district judge's decision to deny the motions was not clearly erroneous.

## B. Appellants' Claims

Appellants' arguments to reverse the district court's denial of their motions to withdraw their guilty pleas would fail even if we considered them on their merits.

### 1. Alleged Government Misrepresentations and Withholding of Evidence

■ While a denial of a motion to withdraw a guilty plea is reviewed for abuse of discretion, we consider de novo whether violations of the government's duty of disclosure under *Brady,* if any, rendered Appellants' guilty pleas sufficiently unintelligent to invalidate them. *See Sanchez,* 50 F.3d at 1453–1454.

■ Appellants argue that the tape recording transcripts introduced at the resentencing hearing show that INS Special Agent Brent Easton knowingly made false statements in his affidavit that was used to support the initial complaints. Appellants contend that the government should have produced the tapes prior to their pleas, and that they would not have pled guilty if they had known of the transcripts on which the Easton affidavit was based.

■ Under *Brady,* the government must disclose *before trial* "evidence [that is] material either to guilt or punishment which is favorable to the accused, irrespective of the good faith or bad faith of the prosecution." *United States v. Hanna,* 55 F.3d 1456, 1459 (9th Cir.1995). "Failure to disclose information only constitutes a *Brady* violation if the requested information is 'material' to the defense." *Sanchez,* 50 F.3d at 1454 (citation omitted). In *Sanchez,* we found that the constitutional underpinnings of *Brady* may create a duty of at least some limited degree of disclosure even when a defendant pleads guilty without a trial. *Id.* at 1453–1454.

■ A *Brady* violation does not automatically entitle a defendant to withdraw a guilty plea. The standard for assessing the

effect of a *Brady* violation on a guilty plea is "whether there is a reasonable probability that but for the failure to disclose the *Brady* material, the defendant would have refused to plead and would have gone to trial." *Id.* at 1454. In turn, "the test for whether the defendant would have chosen to go to trial is an objective one that centers on the likely persuasiveness of the withheld information." *Id.* (internal quotation omitted). Even if, as may have happened in these cases, a defendant became more likely to plead guilty in the face of overwhelming, and later partly discredited, evidence, there is no *Brady* violation in guilty plea cases when it is unlikely that a trial would have been materially affected by the absence of the discredited evidence.

While the accuracy of the tapes raised questions about the number of aliens smuggled by Appellants, the government would not have been required at trial to prove the smuggling of any certain number of aliens. If the number of aliens were an element of either of the counts of conviction, the tape recording transcripts might have constituted *Brady* material. However, there is no evidence before this Court that could materially affect a trial in these cases. As discussed above, there has been no serious contention that Appellants are innocent of the crimes charged.

Appellants have not established a reasonable probability that, but for the failure to disclose the alleged *Brady* material, they would have refused to plead and would have gone to trial. Therefore, Appellants' *Brady* and misrepresentation claims fail.

### 2. Defective Pleas

■ Appellants argue that their pleas were defective because the pleas (1) were not supported by an adequate factual basis, (2) resulted in part from their limited knowledge of the English language, and (3) resulted from government coercion effectuated through the offering of a package deal that provided favorable treatment for co-defendant relatives. All of these claims are based upon events known to Appellants when they filed their first appeals.

■ When a party could have raised an issue in a prior appeal but did not, a court later hearing the same case need not consider the matter. *See United States v. Wright,* 716 F.2d 549, 550 (9th Cir.1983) (noting waiver of issues in such situations). Appellants did not attack the validity of their pleas during the first appeals and have therefore waived their right to do so now.

### III. Challenge to Factual Finding of 180 Aliens

■ Appellants dispute the district court's factual finding that "the approximate number of aliens smuggled in the conspiracy which can be attributed to each defendant is at least 180." Appellants suggest that the district court relied to Appellants' detriment on government misrepresentations in the inaccurate summary of the tape recordings. These arguments ignore the fact that the court's ultimate decision to depart was based upon evidence in the government's revised sentencing recommendations that were based upon grand jury testimony, not the suspect tape summaries. Therefore, Appellants' argument fails.

Appellants argue that the grand jury testimony does not support a finding of 180 aliens, but they do not develop any specific arguments as to its inadequacies. Where Appellants have failed to explain why the grand jury testimony is inadequate, we decline to do so. In any case, the finding of 180 aliens is not without support in the record. Therefore, the district court's factual findings were not clearly erroneous.

### IV. Upward Departures

#### A. Standard of Review

■ Appellants challenge the upward departures imposed by the district court on remand. This court reviews for abuse of discretion a district court's decision to depart upward from the sentencing range recommended by the Guidelines.[1] *See United*

---

1. Appellants were originally sentenced on May 12, 1995, and all calculations were based upon

the November 1994 Sentencing Guidelines manual. (Although Appellants were charged when

States v. Sablan, 114 F.3d 913, 916 (9th Cir.1997) (en banc), cert. denied, —— U.S. ——, 118 S.Ct. 851, 139 L.Ed.2d 752 (1998).

Where a district court "sets out findings justifying the magnitude of its decision to depart and extent of departure from the Guidelines, and that explanation cannot be said to be unreasonable, the sentence imposed must be affirmed." Id. at 919. Appellants therefore bear a heavy burden to show the departures are unreasonable.

In their oral appearance before this Court, Appellants argued that they had been subjected to "double counting." While the word choice may not be important, we have usually referred to "double counting" in situations in which a particular element is counted twice in computing the total offense level or the criminal history category. Double counting is sometimes authorized and intended by the Sentencing Guidelines when each invocation of the behavior serves a unique purpose under the Guidelines. See United States v. Starr, 971 F.2d 357, 361 (9th Cir.1992). Impermissible double counting "occurs when one part of the Guidelines is applied to increase a defendant's punishment on account of a kind of harm that has already been fully accounted for by application of another part of the Guidelines." United States v. Reese, 2 F.3d 870, 895 (9th Cir. 1993). Therefore, impermissible double counting occurs either when a human error is made in the mechanical application of the Sentencing Guidelines, or, perhaps, if and when the Guidelines inadvertently require an impermissible result.

In this case, however, we are not asked to review the application of the Sentencing Guidelines. The calculations themselves are not challenged.[2] Instead, we are asked to review a district court's discretionary decision to depart from the Guidelines. A sentencing judge may consider departure only when "there exists an aggravating or

mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Koon v. United States, 518 U.S. 81, 92, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (quoting 18 U.S.C. § 3553(b)). Therefore, if the upward departures imposed in these cases were based on a factor already adequately incorporated into the total offense level computed by the Guidelines, the sentences must be vacated. Otherwise, they will be affirmed so long as they are reasonable.

In the first appeal, Appellants challenged the authority to impose and the extent of the upward departures. The court determined that a district court has the authority to impose an upward departure based on the number of aliens involved. However, the facts as presented to the first panel involved substantially more than 180 aliens. The departures reviewed by the first panel were made on the basis of PSRs that reported smuggling of "thousands of aliens." Furthermore, the first panel never determined that a six-level departure would be reasonable in these cases based upon any number of aliens. It only established that the district judge had the authority to consider departure, a correct decision that we do not dispute today. Unlike authority, however, the reasonableness of the departures is before the circuit for the first time on this second appeal.

**B. Scope of Review: Factual Basis for Departure**

When deciding whether to depart, the sentencing judge must determine whether any atypical, relevant conduct warrants a higher sentence. Appellate review is deferential in part because many decisions to depart rely upon subjective determinations about the nature of a crime or of the defendant best viewed by the trial judge. Howev-

---

the November 1993 Guidelines were still in effect, the use of the 1994 manual was appropriate because its use had no detrimental effect.) The 1994 manual remained the appropriate version for the 1997 resentencing. All citations, calculations, and hypotheticals in this opinion are based upon the 1994 manual.

2. Mohan Nagra challenges the inclusion of money laundering and its role adjustment in his sentencing calculations. This argument was waived by his failure to raise it on his first appeal. Wright, 716 F.2d at 549–550.

er, in the instant cases, the judge explicitly rested the departures solely on an objective criterion: a finding that the conspiracy involved 180 aliens.[3]

The established number of aliens–180–was the sole basis for the district court's upward departure of six offense levels, which the court explained was appropriate "in light of the large number of aliens involved and the analogous provisions of U.S.S.G. § 2L1.1(b)(2)(C), which provides for a six level departure [sic-adjustment] for smuggling more than 100 aliens." Therefore, we need only analyze the appropriateness of that factor as a basis for departure in this case.

■ Departures based upon the number of aliens involved in a § 1324 violation are expressly authorized by application note five of U.S.S.G. § 2L1.1. We must now decide whether the instant decision to depart by six levels was reasonable.

## C. Resentencing Calculations

While neither the transcript of the resentencing proceedings nor the subsequent written order discusses the calculations underlying the sentences, the sentences were based upon the PSRs prepared by a United States Probation Officer ("Probation") in April 1995.

The methodology for calculating a sentence is set forth in U.S.S.G. § 1B1.1. Pursuant to U.S.S.G. §§ 1B1.1(d) and 3D1.2, each object of a conspiracy is treated as if the information charged each object as a separate count. Therefore, the first important step in preparing the PSRs was a recharacterization of each information as having nine counts, one for each of the eight objects of the conspiracy and one for the substantive count.[4] Under U.S.S.G. § 2X1.1(a), the offense levels for these objects are calculated using the guidelines for the underlying offenses. Offense levels for each count were then determined pursuant to Chapter 2 and Parts A, B, and C of Chapter Three. Next, the grouping rules were applied. Chapter 3, Part D, of the Sentencing Guidelines instructs that offenses

within a multiple-count indictment involving substantially the same harm "are so closely intertwined with other offenses that conviction for them ordinarily would not warrant increasing the guideline range." U.S.S.G. § 3D1.2 and § 3D, intro. comment. The PSRs identified two groups of offenses. The first group includes seven "counts," comprising all offenses relating to the receipt, possession and distribution of counterfeit documents and alien smuggling, including 18 U.S.C. §§ 201(c)(1), 1546, and all "counts" relating to 8 U.S.C. § 1324. The remaining two "counts," 18 U.S.C. § 1956 and 31 U.S.C. § 5324, were grouped separately as money laundering offenses. While these two counts arguably should have been grouped with the other offenses, the parties have not objected to the grouping determinations and so we need not review them at this time. *See United States v. Lopez*, 104 F.3d 1149 (9th Cir.1997) (vacating sentences because money laundering should have been grouped with related drug trafficking counts).

The combined adjusted offense level for each group is the highest of the offense levels calculated for each of the counts in the group. U.S.S.G. § 3D1.3. In these cases, the two groups were "driven," respectively, by the violations of 18 U.S.C. §§ 201(c) [gratuities] and 1956 [money laundering]. Because they were unnecessary for the computation of the total offense levels, the final PSRs do not include offense levels for the lesser offenses within each group, including the § 1324 violations. The illustration below reincorporates the § 1324 computations into the PSRs that were used to sentence Appellants. (Other "hidden" offenses are not included in this illustration.)

### Figure 1: Sentencing Calculations Used by District Court

Closely Related Offenses

*Group one:*

---

3. Although the judge referred to "at least 180 aliens," his ultimate finding is necessarily limited in this appeal to 180.

4. Some of the objects of the conspiracy involved multiple violations of the same law. These offenses are grouped pursuant to U.S.S.G. § 3D1.2(d). For the purposes of this opinion, each code provision is treated as a single count.

Base offense level for gratuities, 18 U.S.C. § 201(c)(1)(A); U.S.S.G. § 2C1.2 7

Adjustment: involved more than one gratuity, § 2C1.2(b)(1) +2

Adjustment: amount of gratuities, U.S.S.G. §§ 2C1.2(b)(2)(A), 2F1.1(b)(1)(L) +11

Role adjustment, § 3B1.1(a)[5] +4

 Subtotal for gratuities 24

Base offense level for bringing in aliens, § 1324(a)(1)(D), U.S.S.G. § 2L1.1(a)(2) 9

Maximum adjustment based on 100 or more aliens, U.S.S.G. § 2L1.1(b)(2)(C) +6

Role adjustment, § 3B1.1(a) +4

Pursuant to § 3D1.3(b), use the highest of the two subtotals 24

Group one adjusted offense level 24

*Group two:*

Money laundering, 18 U.S.C. § 1956, U.S.S.G. § 2S1.1(a)(2) 20

Role adjustment, U.S.S.G. § 3B1.1(a) +4

Group two adjusted offense level 24

Multiple count adjustment, 2 units, U.S.S.G. § 3D1.4 +2

Combined adjusted offense level 26

Acceptance of responsibility, U.S.S.G. § 3E1.1

TOTAL OFFENSE LEVEL 23

Guideline range for offense level of 23, criminal history category I 46–57 mo.

Upward departure = to +6

Offense level calculated as if 29 at criminal history category I, for range of 87-108 months. Received 96 months.

### D. Probation's Recommendation to Depart

The six-level departure was originally suggested in these cases by Probation in view of the contention that Appellants had smuggled "thousands" of aliens. Their recommendation of six levels was not arbitrary; it was calculated to reach the maximum ten-year sentences permitted for a two-count conviction under 18 U.S.C. §§ 371 and 1324.[6] Probation would have recognized that it had already incorporated into the group one calculations an adjustment for the first "100 or more aliens" pursuant to U.S.S.G. § 2L1.1(b)(2)(C). As the conspiracy reached into the "thousands" of aliens, though, a departure appeared appropriate. When the established number of aliens was reduced from "thousands" to 180, however, the government continued to advocate the same six-level departure. Probation was not asked to draft new PSRs based upon the factual findings of 180 aliens and did not take a position during the 1997 resentencing proceedings.

### E. The First "100 or More" Aliens

The government argues that the departures are appropriate because the total offense levels did not reflect *any* significant number of aliens, i.e., more than six. In justifying the departures, the district court referred to the "analogous" provisions of U.S.S.G. § 2L1.1(b)(2)(C), which is the six-level adjustment for smuggling more than 100 aliens. The word "analogous" was no

---

**5.** U.S.S.G. § 3D1.3 instructs that any role adjustment is added to each applicable count prior to the selection of the highest offense level. We have assumed that a four-level role adjustment is applicable to all counts.

**6.** Probation did not recommend reductions for acceptance of responsibility. The trial court granted three-level reductions for acceptance of responsibility, so the sentences did not reach 120 months even with the six-level departures.

doubt used in part because courts were, at the time, required to analogize departures to other sections of the Sentencing Guidelines.[7] However, the judge's explanation in this instance also implies that he intended the six-level "departure" to mimic the adjustment because he thought that the total offense level did not already reflect that degree of smuggling.

As figure one illustrates, the first "100 or more" aliens in fact are already included in the computations of the total offense levels. In its draft calculations for group one, Probation would have compared the pre-role offense level of 20 for bribery with the § 1324 calculation so that it could determine which offense should control the total for the first group of offenses. The § 1324 violations had a base offense level of 9, and a six-level adjustment would have been added because the conspiracy involved 100 or more aliens. The resulting adjusted offense level, 15, was smaller than 20, so the calculation was not formally published in the final PSRs.

Therefore, the six-level upward departures can only be supported if they represent a reasonable punishment in these cases for smuggling over and above the number of aliens accounted for in U.S.S.G. § 2L1.1(b)(2)(C). The foundation for such a departure must rely upon a finding of "substantially more than 100 aliens" as provided in application note five of U.S.S.G. § 2L1.1.

### F. A Six–Level Departure is Unreasonable for 180 Aliens

#### 1. "Substantially more than 100 aliens"

To determine the reasonableness of a departure based upon a finding of "substantially more than 100 aliens," it is first necessary to determine the approximate numerical meaning of "substantially." The relevant sentencing guidelines for § 1324 provide a base offense level of 9, with the following adjustments: +2 for 6–24 aliens, +4 for 24–99 aliens, and +6 for 100 or more aliens. Because the 24–99 category represents an increase of 75 aliens, the "100 or more" category contemplates at least 175 aliens, and "substantially more than 100" would not begin until 176. Moreover, the threshold for a four-level adjustment (24) is quadruple the threshold for the two-level adjustment (6), and the threshold for the six-level adjustment (100) is quadruple the threshold for the four-level adjustment (24). Using this exponential, the "100 or more aliens" category would include 100–399 aliens. Even if we did not continue to quadruple the threshold levels, some degree of geometric, rather than linear, gradations is generally more appropriate. We hold that at least 180 aliens are included in the six-level adjustment range.[8]

Even if we imputed the upper limit of the six-level adjustment at 175, a six-level departure for 180 aliens imposes more than one level per additional alien. Clearly, such a departure would be excessive.

### 2. Did the departures add more time than would separate prosecutions?

In *United States v. Mathews*, we explained that "[w]here an upward departure is based on an analogy to another guideline, one measure of the reasonableness of the departure is to treat the aggravating factor as a separate crime and ask how the defendant would be sentenced if convicted separately of that crime. We have previously observed that a departure which results in a sentence greater than the sentence the defendant would have received for a separate conviction 'create[s] more distortion than the regular guideline procedure.'" 120 F.3d 185, 188 (9th Cir. 1997) (quoting *United States v. Luscier*, 983 F.2d 1507, 1513–14 (9th Cir.1993)). As the Seventh Circuit has noted, "[i]t would throw the structure of the guidelines out of kilter to say that a defendant may receive more time on a 'departure' than he could have received had he been convicted of the crimes leading the judge to depart." *United States v. Ferra*, 900 F.2d 1057, 1063 (7th Cir.1990).

The upward departures imposed in the instant cases increased Appellants' sentences by approximately 44 months (they received

---

7. The analogy requirement was overruled in *Sablan*, 114 F.3d at 919.

8. It is regrettable that U.S.S.G. § 2L1.1(b)(2) does not provide a more exhaustive schedule of adjustments.

96 months instead of approximately 52 months), while separate prosecutions would have produced total sentences of approximately 21–33 months.[9]

## G. Punishing Multiple Types of Harm

It has been suggested that departures might be appropriate in these cases because different types of harm were caused by Appellants' violations involving two types of aliens, those who were smuggled by the Nagra conspiracy and those who entered the United States by some other means but then received assistance from the Nagras.

We reject this argument. Distinguishing between the smuggled aliens and the aliens already in the United States splits too fine a hair. The alien crimes were part of one large conspiracy. The interrelatedness of these crimes is reflected in the decision to group the gratuities and all of the § 1324 offenses in the first place. Furthermore, even if Appellants did not "bring in" some of the aliens, by assisting in their acquisition of false immigration documents, Appellants still would have violated § 1324 by knowingly concealing, harboring, and/or shielding these aliens from detection. 8 U.S.C. § 1324(a)(1)(C). For sentencing purposes, these offenses are virtually indistinguishable from alien smuggling. Therefore, assessing separate penalties for trafficking in immigration documents and smuggling illegal aliens would represent "multiple punishment for substantially identical offense conduct." U.S.S.G. § 3D, intro. comment.

Even if we were to bifurcate the § 1324 violations, the departures would still be exposed as unreasonable. We would recalculate the sentences using three, rather than two, groups of closely related offenses, yielding slightly higher sentences than the pre-departure ranges but significantly lower than those actually imposed:

### Figure 2: Hypothetical Sentencing Using Separate Groups for Counterfeit Documents and Alien Smuggling

*Group one:*

| | |
|---|---|
| Base offense level for gratuities, 18 U.S.C. § 201(c)(1)(A), U.S.S.G. § 2C1.2 | 7 |
| Adjustment: involved more than one gratuity, U.S.S.G. § 2C1.2(b)(1) | +2 |
| Adjustment: amount of gratuities, U.S.S.G. §§ 2C1.2(b)(2)(A), 2F1.1 | +11 |
| Role adjustment, U.S.S.G. § 3B1.1(a) | +4 |
| Group one adjusted offense level | 24 |

*Group two:*

| | |
|---|---|
| Base offense level for bringing in aliens, 8 U.S.C. § 1324, U.S.S.G. § 2L1.1 | 9 |
| Maximum adjustment based on 100 or more aliens, U.S.S.G. § 2L1.1(b)(2)(C) | +6 |
| Role adjustment, U.S.S.G. § 3B1.1(a) | +4 |
| Group two adjusted offense level | 19 |

*Group three:*

| | |
|---|---|
| Money laundering, 18 U.S.C. § 1956, U.S.S.G. § 2S1.1(a)(2) | 20 |
| Role adjustment, U.S.S.G. § 3B1.1(a) | +4 |
| Group three adjusted offense level | 24 |

| | |
|---|---|
| Multiple count adjustment, 2 1/2 units, U.S.S.G. § 3D1.4 | +3 |
| Acceptance of responsibility, U.S.S.G. § 3E1.1 | −1 |

9. Base offense level of 9, six-level adjustment for more than 100 aliens, four-level role adjustment and three-level reduction for acceptance of responsibility produces a total offense level of 16 and a guideline range of 21–27 months. A departure equivalent to two levels would yield a sentencing range of 27–33 months. The government recognizes *Mathews* in its briefs but erroneously employs the increased offense levels provided in the 1996 Guidelines.

TOTAL OFFENSE LEVEL 24
Guideline range for offense
level of 24 and criminal history
category I 51–63 mo.

(Note: The offense level is one level higher than was assessed to Appellants prior to departure. The extra level accrues under the multiple count adjustment, which is generally the proper mechanism for punishing numerous, unrelated crimes that involve different harms.)

While we hold that the alien smuggling and bribery were properly grouped, this hypothetical analysis demonstrates that the 96–month sentences imposed were excessive even in an attempt to punish the crimes separately.

## H. Departures Involving Grouped Offenses

Even if we were inclined to affirm a six-level departure in a one-count § 1324 case, the departures in the instant cases raise an additional, and potentially more severe, issue unique to departures imposed for conduct related to offenses that have been grouped under the Guidelines.

While the upward departures in these cases were based on the number of illegal aliens, Appellants' sentences were driven by the bribery and money laundering adjusted offense levels. The combined adjusted offense level for the first group of closely related offenses, 24, was based upon the bribery offense, which itself was heavily weighted by adjustments. The offense level of 24 from bribery would continue to equal or exceed the alien smuggling offense level even with an adjustment of up to *eleven levels*.[10]

Chapter 3, Part D, of the Sentencing Guidelines provides that some offenses should be grouped together "to prevent multiple punishment for substantially identical offense conduct." U.S.S.G. § 3D intro. comment. It is not disputed in these cases that the bribery of INS officials and the smuggling of illegal aliens in violation of § 1324 were properly grouped, and therefore represented "substantially identical offense conduct." Because of the large number of aliens

and the corresponding high dollar value of the associated bribes, the aggregate level of the offenses drove the sentencing calculations through adjustments. The full volume of gratuities, at $1,423,399.98, was factored into Appellants' sentences, resulting in thirteen levels of adjustments. The magnitude of the resulting sentencing range contemplates the type of immigration smuggling conspiracy involving numbers of aliens well in excess of 180 aliens.

While trial judges are not required to articulate the following hypothetical when departing on grouped offenses, it is instructive to ask what the effect would have been on Appellants had the Sentencing Guidelines simply included a more comprehensive adjustment schedule for alien smuggling in U.S.S.G. § 2L1.1. The purpose of these calculations is not to show how sentencing could have been done; a court may not create an adjustment. Instead, these illustrations test the *reasonableness* of the departures.

Adjustment schedules in the Guidelines typically cover all but the most unusual cases. For example, the bribery adjustment schedule contemplates *eighteen* categories of adjustments based on dollar amounts, concluding with an eighteen-level adjustment for bribes of more than $80 million. The highest adjustment range starts at a dollar amount 40,000 times larger than the threshold for the first adjustment. *See* U.S.S.G. §§ 2C1.2(b)(2)(A), 2F1.1(b)(1)(S). For whatever reason, the schedule in § 2L1.1(b)(2) has only three categories, the largest of which begins at a number only sixteen times larger than the threshold for the first adjustment. If the alien smuggling adjustment schedule included even one-third of the number of categories provided in the fraud schedule, it clearly would have included a guideline adjustment for 180 aliens.

In most cases, the threshold at which adjustments end and departures begin is an irrelevant, seamless transition that a lay defendant would hardly recognize. In the instant cases, however, the characterization of these additional levels as departures had a

---

**10.** The Guidelines' sentencing range would not include the 96–month sentences imposed in these cases until seventeen levels of adjustments were added to Appellants' role-adjusted offense level for alien smuggling. A seventeen-level adjustment would yield a combined adjusted offense level of 30 for group one, and the multiple count adjustment would add one additional offense level. After reducing three levels for acceptance of responsibility, the resulting total offense level of 28 would provide a guideline range of 78–97 months.

tremendous impact. We have already determined that additional levels beyond the six-level adjustment for "100 or more aliens" is not warranted on a finding of 180 aliens. However, even if the Guidelines had provided for an eight or ten-level adjustment for smuggling 180 aliens, Appellants' total offense levels would have remained unchanged because their alien smuggling offense levels would still be exceeded by their bribery offense levels. Appellants would have received sentences of approximately 52 months, rather than 96 months. The Sentencing Guidelines did not intend such an incongruous and disproportionate result.

### I. Availability of Departures Based On Lesser Offenses

Although departures based on a lesser offense are suspect, trial judges still have authority to depart in such cases when relevant, aggravating factors transform a "lesser" offense into the *de facto* greater offense. This general principle of law is not in conflict with our determination in these cases that the departures were unreasonable-regardless of the relative interplay between the sentencing calculations in multiple-count cases, at some point conduct related to a "lesser" offense can become so extreme that it warrants punishment above the sentencing guideline. Had the learned trial judge determined that the number of aliens in these cases had been greatly in excess of 100, or if he relied upon other aggravating factors, departure *might* have been reasonable.

When a defendant's sentence is driven by his § 1324 offense level, a departure based upon the number of aliens involved begins to become justified somewhere between 181 and 500 aliens. However, the threshold in these cases is necessarily higher because the Appellants' sentencing ranges, driven by other counts, already contemplated adequate punishment for the smuggling of many more than 180 aliens. Under these circumstances, the decision to depart was unreasonable and must be reversed.

### V. Reassignment to a Different District Judge

 Appellants request that the panel order reassignment of their cases to another

district judge. Three criteria are relevant: (1) whether the original judge could reasonably be expected to put out of his mind previously expressed views or findings found to be erroneous; (2) whether reassignment is advisable to preserve the appearance of justice; and (3) whether reassignment would entail waste or duplication of effort out of proportion to the gain realized in preserving the appearance of fairness. *See, e.g., United States v. Huckins*, 53 F.3d 276, 280 (9th Cir.1995).

We have full confidence in the district judge's impartiality and have no reason to doubt that he will give full consideration to the issues raised in this opinion. Therefore, this request is denied.

### VI. Conclusion

The upward departures imposed in these cases were unreasonable. Therefore, the sentences are vacated and the cases are remanded for resentencing.

AFFIRMED IN PART, REVERSED IN PART, and REMANDED for resentencing proceedings consistent herewith.