**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

VIVIAN TAT,

*Defendant-Appellant*.

No. 22-50240

D.C. No.
2:14-cr-00702-
ODW-2

OPINION

Appeal from the United States District Court
for the Central District of California
Otis D. Wright II, District Judge, Presiding

Argued and Submitted October 5, 2023
Pasadena, California

Filed April 4, 2024

Before: Daniel P. Collins, Salvador Mendoza, Jr., and
Roopali H. Desai, Circuit Judges.

Opinion by Judge Mendoza

## SUMMARY[*]

### Criminal Law

In a case stemming from Vivian Tat's involvement in a money-laundering scheme, the panel vacated the sentence imposed at resentencing and remanded for resentencing.

The panel held that a criminal defendant's failure to challenge specific aspects of her initial sentence on a prior appeal does not waive her right to challenge comparable aspects of a newly imposed sentence following de novo resentencing.

The panel held that the district court erred in applying an organizer/leader enhancement under U.S.S.G. § 3B1.1 for two reasons: (1) contrary to the district court's suggestion, Tat's status as a mere member of the criminal enterprise— even if she was an essential member—does not bear on whether she was an organizer, leader, manager, or supervisor of the criminal activity; and (2) the criminal conduct—a scheme to launder roughly $25,000 via a single transaction involving four participants and one victim—was not "otherwise extensive."

The panel held that the district court did not err in applying an enhancement for abuse of trust under U.S.S.G. § 3B1.3, where Tat's position as a manager at the bank gave her the discretion to carry out transactions like the one at issue here without oversight, and where her position of trust facilitated her role in the underlying offense.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel held that the district court did not improperly consider "cost" in dismissing Tat's community-service proposal. The panel wrote that unlike the cost of imprisonment, which may not be considered, the cost of Tat's proposed alternative to incarceration, and the lack of measurable goals and violations for probation to work with, are valid concerns that a district court may consider.

Because the panel remanded for resentencing, the panel did not need to reach Tat's argument that the district court failed to resolve two factual disputes in violation of Fed. R. Crim. P. 32.

**COUNSEL**

Alyssa D. Bell (argued) and Michael V. Schafler, Cohen Williams LLP, Los Angeles, California, for Defendant-Appellant.

Bram M. Alden (argued), Assistant United States Attorney Chief, Criminal Appeals Section; Consuel S. Woodhead and Karen I. Meyer, Assistant United States Attorneys; Joseph T. McNall, United States Attorney; Office of the United States Attorney, United States Department of Justice, Los Angeles, California; for Plaintiff-Appellee.

# OPINION

MENDOZA, Circuit Judge:

Defendant-Appellant Vivian Tat has twice been sentenced by the district court and twice appealed to this court, stemming from her involvement in a money-laundering scheme and resulting conviction. In 2018, Ms. Tat was convicted on several counts and, in early 2019, she was sentenced to 24 months imprisonment. On appeal in *United States v. Tat*, 15 F.4th 1248 (9th Cir. 2021) ("*Tat I*"), we vacated her conviction as to one count, vacated her sentence, and remanded for *de novo* resentencing. At her second sentencing hearing, the district court resentenced Ms. Tat to 18 months imprisonment. Now, in her second appeal, Ms. Tat asks this court to vacate her sentence and remand so that she may be sentenced for a third time. She argues that the district court abused its discretion in applying the abuse-of-trust and organizer/leader sentencing enhancements, improperly considered "cost" in dismissing her community-service proposal at sentencing, and violated Federal Rule of Criminal Procedure 32 by failing to make findings of fact about certain portions of her presentence report. The government disagrees. It argues that Ms. Tat waived her challenge to the sentencing enhancements by failing to raise them on appeal from her initial sentence in *Tat I*, and that the district court did not otherwise err when it resentenced her.

Ms. Tat's appeal raises procedural and substantive concerns. *First*, we address whether Ms. Tat waived her challenge to the district court's application of the sentencing enhancements. Following the Second and Third Circuits' lead, we conclude that a criminal defendant's failure to challenge specific aspects of her initial sentence on a prior

appeal does not waive her right to challenge comparable aspects of a newly imposed sentence following de novo resentencing. *Second*, we turn to the merits of Ms. Tat's challenges to her sentence. We agree with Ms. Tat that the district court erred in applying the organizer/leader enhancement. But we disagree with Ms. Tat regarding the district court's imposition of an abuse-of-trust enhancement and the court's analysis regarding the "cost" of her community-service proposal. Because we vacate the sentence on other grounds, we do not reach whether the district court failed to comply with Rule 32, and we remand to the district court for further proceedings consistent with this opinion.

## I.

In 2009, while working as a branch manager for a bank, Ms. Tat participated in a scheme to launder roughly $25,000. *See generally Tat I*, 15 F.4th at 1249–50.[1] After five years of investigation, the government indicted Ms. Tat. Four years later, she was convicted of one count of conspiring to launder money, in violation of 18 U.S.C. § 1956(h), and two counts of making false entries in bank records, in violation of 18 U.S.C. § 1005.

At Ms. Tat's first sentencing in 2019, the sentencing at issue in *Tat I*, the parties disputed whether the district court should apply a four-level organizer/leader enhancement under U.S.S.G. § 3B1.1 and a two-level enhancement for abuse of a position of trust under U.S.S.G. § 3B1.3. The district court overruled Ms. Tat's objections to the sentencing enhancements, resulting in a guidelines range of

---

[1] The facts of this scheme are laid out in detail in *Tat I*.

33 to 41 months, and it sentenced Ms. Tat to 24 months imprisonment followed by two years of supervised release.

Ms. Tat appealed, arguing that there was insufficient evidence to support her conviction on the two false-entry counts. She did not challenge the district court's ruling regarding the organizer/leader and abuse-of-trust sentencing enhancements in her initial appeal. In *Tat I*, we reversed one count of false entry, vacated the original sentence, and remanded to the district court for de novo resentencing. 15 F.4th at 1253–54.

Ms. Tat's second sentencing proceeded in two parts. The first took place on September 14, 2022, and opened with the district court stating, "as a practical matter, [the overturned count] is not going to result in any change but we're going to go through the motions nonetheless." The district court then heard argument regarding the organizer/leader and abuse-of-trust enhancements. With regard to the organizer/leader enhancement, the presentence report ("PSR") stated:

> In analyzing Tat's role in this offense, the Probation Officer initially recommended that Tat did not occupy a mitigating role or aggravating role in this offense. The Court, however, has concluded that Tat occupied an aggravating role in this offense and a 4-level increase has been applied.

And with respect to the abuse-of-trust enhancement, the PSR stated:

> Here, Tat served as the bank manager at the time of the offense. As such, her position as

the bank manager significantly facilitated the commission of the offense. She was clearly aware of the [Bank Secrecy Act] reporting requirements and manipulated bank policies to secure the initial three cashier's checks. Further, throughout this offense, Tat used her role as bank manager to circumvent [the bank's] policies and practices to detect and track large cash transactions. Accordingly, Tat abused a position of trust; and, a 2-level increase has been applied.

The district court ultimately applied both enhancements over Ms. Tat's objection.

Ms. Tat also asked the court to resolve two factual disputes: the first related to her deteriorating mental health, as evidenced by Dr. Christine Wong's report; the second to her alleged pattern of criminal behavior. With regard to the former, the district court suggested "that the cause of any anxiety and depression [Ms. Tat] feels is quite clearly this case and the fact that the one thing that's unresolved is the punishment issue and it is reasonable that she's feeling some mental distress about that. No question. And I didn't need a psychotherapist to tell me that." And with regard to the latter, the district court heard argument as to whether Ms. Tat's conduct was part of a pattern of criminal activity.

The district court then moved on to potential sentencing options for Ms. Tat and asked the parties to address whether "alternatives to incarceration [] might be beneficial to the community." The district court asked defense counsel whether Ms. Tat had thought of ways she could use her knowledge and skillset to help others, while discouraging others from following in her footsteps. After defense

counsel, and Ms. Tat herself, suggested a few community-service projects, the court shifted gears to focus on whether she had *already* engaged in community service, or demonstrated signs of growth and remorse to distinguish herself from the person who had committed the crime a decade prior. Defense counsel highlighted Ms. Tat's years of compliance with pretrial release and specific facts in Dr. Wong's report. The district court asked Ms. Tat herself:

> Now, there is no correct answer as to what you might be able to do. I'm just wondering whether or not you've given it any thought about what you might be able to do to correct this wrong; and if you haven't, that's fine, absolutely fine. I'm certainly not going to hold it against you but if you have, if you really have, then I'd really love to hear that because it's one thing for the attorneys to stand up here and make argument, it's something else entirely for the principals involved to talk about concrete things that they would like to do.

The district court then gave defense counsel 30 days to confer with Ms. Tat before reconvening to discuss alternatives to incarceration.

A month later, on October 14, 2022, the court reconvened for part two of Ms. Tat's resentencing. In lieu of confinement, Ms. Tat proposed that she complete a minimum of 20 hours per week of community service; disseminate a public service announcement ("PSA") to her community about the pitfalls of money laundering; and partner with banks to conduct presentations to her former

peers about this issue. The district court applauded Ms. Tat's creative efforts, but expressed concern with how "costly" her proposal was, and how difficult it would be for probation to monitor her compliance, stating: "trying to manage this unwieldy thing that's also going to be expensive which also -- it probably is going to mean that it's not going to happen." Defense counsel conceded that Ms. Tat could not, at that moment, afford the PSA, but registered their "hop[e] that [they] could fundraise for that part of the program." The district court commended defense counsel for their proposal but ultimately rejected it. The court then found Ms. Tat's guideline range remained 33 to 41 months—which accounted for the four-level organizer/leader enhancement and the two-level abuse-of-trust enhancement—and sentenced Ms. Tat to 18 months of imprisonment.

Ms. Tat timely appealed.

## II.

We have jurisdiction to review this sentence under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review the district court's interpretation of the United States Sentencing Guidelines de novo, its application of the Guidelines to the facts of the case for abuse of discretion, and its factual findings for clear error. *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1170 (9th Cir. 2017) (en banc).

## III.

We start with whether Ms. Tat can challenge the district court's application of the organizer/leader and abuse-of-trust sentencing enhancements, or whether she waived her challenge to the district court's application of those enhancements by not raising it in *Tat I*. The government urges us to find waiver, citing our decision in *United States*

*v. Nagra* for the proposition that, "[w]hen a party could have raised an issue in a prior appeal but did not, a court later hearing the same case need not consider the matter." 147 F.3d 875, 882 (9th Cir. 1998). Ms. Tat argues that "[t]he *Nagra* rule has *never* been applied in this Circuit to bar a defendant from challenging any aspect of her sentence following an unlimited remand for resentencing," and in any event, that we should refrain from extending *Nagra* to that context. We agree with Ms. Tat.

"Waiver is the intentional relinquishment or abandonment of a known right." *United States v. Mercado-Moreno*, 869 F.3d 942, 959 n.9 (9th Cir. 2017) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)) (alteration omitted). When we remand for de novo resentencing, it is a "settled principle" that vacating an appellant's original sentence "legally 'wipe[s] the slate clean,'" *United States v. Merrell*, 37 F.4th 571, 576 (9th Cir. 2022) (quoting *Pepper v. United States*, 562 U.S. 476, 507 (2011)), and that on remand in such a case, "the defendant is placed in the same position as if he [or she] had never been sentenced," *id.* (quoting *United States v. Maldonado*, 996 F.2d 598, 599 (2d Cir. 1993) (per curiam)); *see also United States v. Handa*, 122 F.3d 690, 692 (9th Cir. 1997), *as amended on reh'g* (Aug. 4, 1997) (holding that remand to the district court begins "the sentencing process afresh"). Generally, therefore, the district court is "free to consider any matters relevant to sentencing, even those that may not have been raised at the first sentencing hearing, as if it were sentencing de novo." *United States v. Matthews*, 278 F.3d 880, 885–86 (9th Cir. 2002) (citations omitted).

Our remand in *Tat I* left the district court free to rewrite the script with respect to Ms. Tat's sentencing. Ms. Tat had been convicted on three counts and sentenced accordingly.

But we reversed one of those convictions, *Tat I*, 15 F.4th at 1249, and we did not direct the district court to conduct a limited resentencing on remand, *see United States v. Klump*, 57 F.3d 801, 803 (9th Cir. 1995) (holding that "the general rule that resentencing is de novo applies" absent limiting language). *Cf. United States v. Pimentel*, 34 F.3d 799, 800 (9th Cir. 1994) ("In light of this clear evidence that the scope of our remand was limited to the single sentencing issue raised in Pimentel's prior appeal, the district court was without authority to reexamine any other sentencing issues on remand."). We therefore sent the case back to the district court to resentence Ms. Tat on a clean slate. Accordingly, Ms. Tat's failure to challenge certain aspects of her initial sentence on appeal in *Tat I* cannot amount to an "intentional relinquishment or abandonment" of her right to challenge similar aspects of her second sentence in the present appeal. *See Mercado-Moreno*, 869 F.3d at 959 n.9. And because Ms. Tat was to be resentenced de novo, she was free to raise any timely objections at that resentencing, without regard to whether she might have forfeited such objections at the prior sentencing that was completely set aside.

The government's reliance on *Nagra* stretches its waiver rule too far. In the appeal preceding our decision in *Nagra*, we vacated the defendants' sentences "because the trial court had imposed departures without articulating sufficient supporting factual findings," and remanded for resentencing. 147 F.3d at 878. On remand, however, the defendants sought more than resentencing: they moved to withdraw their guilty pleas. *Id.* After the district court rejected their arguments, the defendants appealed a second time and we affirmed the district court's denial of the defendants' motions to withdraw their pleas because they were "based upon events known to [the defendants] when they filed their

first appeals." *Id.* at 882. Properly read, therefore, *Nagra* does not bar defendants from challenging aspects of a new sentence following de novo resentencing. Instead, *Nagra* merely stands for the unremarkable proposition that erasing a defendant's sentence has no bearing on the validity of that defendant's plea agreement. After all, remand could not open the door for the defendants to bring new challenges to their plea agreements that they could have raised all along. Here, conversely, Ms. Tat challenges aspects of a newly imposed sentence following a remand for de novo resentencing; she does not seek to vacate her convictions. To broadly extend *Nagra*'s reasoning to this case, as the government invites us to do, would thus contravene *Merrell*, *Handa*, and *Matthews*, and we see no basis to create such an unnecessary conflict.

Our approach today also aligns with that of our sister circuits. In *United States v. Quintieri*, the Second Circuit distinguished between de novo and limited resentencing for the purposes of forfeiture and waiver. 306 F.3d 1217, 1225 (2d Cir. 2002). And it held that where, as here, "a case is remanded for *de novo* resentencing, the defendant may raise in the district court and, if properly preserved there, on appeal to the court of appeals, issues that he or she had previously waived by failing to raise them." *Id*. Likewise, the Third Circuit followed *Quintieri*'s lead in *United States v. Miller*, holding that vacatur of a sentence provides an "exception to the waiver doctrine," which allows defendants to raise issues not previously argued following a remand for de novo resentencing. 594 F.3d 172, 179 (3d Cir. 2010) (citing *Quintieri*, 306 F.3d at 1225). As in *Quintieri*, the *Miller* court reasoned that "when the resentencing is de novo rather than limited, issues concerning the first sentence that

were previously waived may be raised in the first instance if warranted by the second sentence." *Id.* at 179.[2]

Consistent with our precedent and with that of the Second and Third Circuits, we hold that Ms. Tat did not waive her challenge to the district court's application of the sentencing enhancements following the de novo resentencing.

## IV.

Turning to the merits of Ms. Tat's challenges to her sentence, we conclude that the district court erred in applying the organizer/leader enhancement, but permissibly applied the abuse-of-trust enhancement. Additionally, we see no error in its decision to reject her community-service proposal. And we decline to address whether the district court violated Rule 32 in its factfinding. We take each in turn.

## A.

The district court may apply a four-level organizer/leader enhancement when "the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive." U.S.S.G. § 3B1.1(a). To impose such an enhancement, "there must be evidence that the defendant exercised some control over others involved in the commission of the offense or was responsible for organizing others for the purpose of carrying out the crime." *United States v. Avila*, 95 F.3d 887, 889 (9th Cir. 1996) (quoting *United States v. Harper*, 33 F.3d 1143,

---

[2] We do not reach the related issue addressed by the Second Circuit in *Quintieri* regarding the circumstances in which a defendant may raise new challenges to a newly imposed sentence following a *limited* remand. 306 F.3d at 1225.

1151 (9th Cir. 1994)). "Under this circuit's clear articulation of § 3B1.1[], 'even a defendant with an important role in an offense' cannot receive an enhancement unless there is also a 'showing that the defendant had control over others.'" *United States v. Whitney*, 673 F.3d 965, 975 (9th Cir. 2012) (quoting *United States v. Lopez-Sandoval*, 146 F.3d 712, 717 (9th Cir. 1998)).

The district court erred in applying this enhancement to Ms. Tat for two reasons. First, contrary to the district court's suggestion, Ms. Tat's status as a mere member of the criminal enterprise—even if she was an essential member— does not bear on whether she was as an organizer, leader, manager, or supervisor of the criminal activity. It is insufficient for purposes of the organizer/leader enhancement to show that, "but for" a defendant's participation, the crime could not have occurred. *See Harper*, 33 F.3d at 1151. "[E]ven a defendant with an important role in an offense" cannot receive an enhancement unless there is also a "showing that the defendant had control over others." *Lopez-Sandoval*, 146 F.3d at 717 (quoting *United States v. Ramos-Oseguera*, 120 F.3d 1028, 1039 (9th Cir. 1997)). And Ms. Tat did not exhibit the requisite control over other participants[3] involved in the criminal conduct. *See Whitney*, 673 F.3d at 975; *see also United States v. Holden*, 908 F.3d 395, 402 & n.9 (9th Cir. 2018) (holding that, "[f]or the organizer enhancement to be proper, there must be evidence in the record to support the conclusion that Defendant exercised control *over* [participants] or was able

---

[3] "A 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted. A person who is not criminally responsible for the commission of the offense . . . is not a participant." U.S.S.G. § 3B1.1(a), cmt. n.1.

to influence [participants]" because "unwitting facilitators of an offense, even if they are 'participants' in the usual sense of the word, do not count").

Second, even if Ms. Tat had exercised the requisite level of control over participants in the criminal conduct, the enhancement was still improperly applied here. Because the criminal activity involved fewer than five participants,[4] the government also had to show that the criminal activity was "extensive." U.S.S.G. § 3B1.1(a). In *United States v. Rose*, we explained that whether criminal activity is extensive depends on (1) "the number of knowing participants and unwitting outsiders"; (2) "the number of victims"; and (3) "the amount of money fraudulently obtained or laundered." 20 F.3d 367, 374 (9th Cir. 1994).

Applied here, those principles dictate that the criminal activity at issue was not otherwise extensive. The activity at issue—a scheme to launder roughly $25,000 via a single transaction involving four participants and one victim—was criminal, but pales in comparison, by size and scale, to the type of schemes that we have found to be extensive. *See, e.g.*, *Rose*, 20 F.3d at 374 (noting an extensive scheme that "involved approximately $3 million, sixty knowing or unwitting employees . . . , an untold but no doubt considerable number of bank employees and other outsiders, and scores of duped investors"); *United States v. Govan*, 152 F.3d 1088, 1096 (9th Cir. 1998) (describing an extensive scheme that involved "interstate travel, a large number of victims," and "nearly $100,000 in robbery proceeds"). Given the limited scope of the criminal conduct here—both in the amount laundered and the number of parties

---

[4] The government concedes that there were only "four criminally culpable participants."

involved—the district court erred in finding it "otherwise extensive." We therefore vacate and remand for the district court to resentence Ms. Tat without applying the organizer/leader enhancement.

## B.

The district court did not err by imposing a two-level sentencing enhancement for abuse of trust under section 3B1.3 of the Sentencing Guidelines. That enhancement "applies when 'the defendant abused a position of public or private trust . . . in a manner that significantly facilitated the commission or concealment of the offense.'" *United States v. Laurienti*, 731 F.3d 967, 973 (9th Cir. 2013) (quoting U.S.S.G. § 3B1.3) (alteration in original). Application of the abuse-of-trust enhancement involves a two-part inquiry: first, whether the defendant occupied a position of trust; second, whether the defendant's position facilitated the offense. *Id.*

As the district court noted, the record reflects that Ms. Tat, who worked as a bank manager, occupied a position of trust. The "decisive factor" in determining whether a defendant occupied a position of trust is "the presence or lack of professional or managerial discretion." *Id.* (quotation marks omitted); *see also United States v. Willard*, 230 F.3d 1093, 1096 (9th Cir. 2000) (recognizing that "[l]imiting the categories of positions of trust to those of professionals and managers is perfectly consistent with the guideline[s]"). Ms. Tat's position as a manager at the bank gave her the discretion to carry out transactions, like the one at issue here, without oversight.

Further, Ms. Tat's position of trust facilitated her role in the underlying offense. Several witnesses—from bank employees to co-conspirators to Ms. Tat herself—testified

about Ms. Tat's managerial authority and the pivotal role it played in the underlying offense. Her position allowed her to conduct transactions alone, unsupervised, and behind closed doors, which facilitated the illicit transaction. And she used her role to circumvent policies that were designed to detect and track large cash transactions. Given this record, the district court's decision to apply the abuse of a position of trust enhancement cannot be said to be "illogical, implausible, or without support in inferences that may be drawn from facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1251 (9th Cir. 2009) (en banc).

## C.

Ms. Tat also argues that the district court improperly considered "cost" in dismissing her community-service proposal. We disagree. Although it is reversible error to consider the cost of *imprisonment* during sentencing, *see United States v. Tapia-Romero*, 523 F.3d 1125, 1127–28 (9th Cir. 2008), here, the district court was concerned with the cost of Ms. Tat's *alternative to incarceration*, and only to the extent that it related to Ms. Tat's ability to fulfill her proposed community-service initiative. The court was also concerned with the lack of measurable goals and violations for probation to work with. These concerns are valid, and do not relate to the issue of "the cost to society of imprisoning a defendant," *id.* at 1126—the factor that we held a district court may not consider in *Tapia-Romero*, *id.* at 1128.

## D.

Finally, Ms. Tat argues that the district court failed to resolve two factual disputes material to the section 3553(a) factors, in violation of Rule 32. Although failure "to make the required Rule 32 findings or determinations at the time

of sentencing" is reversible error, *United States v. Fernandez-Angulo*, 897 F.2d 1514, 1516 (9th Cir. 1990) (en banc), because we vacate and remand for resentencing on other grounds, we need not and do not reach Ms. Tat's argument that the district court failed to comply with Rule 32.

## V.

In accordance with the foregoing, we **VACATE** Ms. Tat's sentence and **REMAND** to the district court for resentencing consistent with this opinion.