**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
　　　　　　　*Plaintiff-Appellee*,

　　　　　　　v.

RAUL MERCADO-MORENO, AKA
Raul, AKA El Ranchero, AKA
Margarito Pacheo Gonzalez, AKA
Junga, AKA Javier Mercado
Maldonado, AKA Raul Mercado
Moreno, AKA Monster, AKA Raul
Monstruo, AKA Talegas, AKA
Talegon,
　　　　　　　*Defendant-Appellant*.

No. 15-10545

D.C. No.
1:04-cr-05185-
AWI-1

OPINION

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Senior District Judge, Presiding

Argued and Submitted May 18, 2017
San Francisco, California

Filed August 28, 2017

Before:  Richard C. Tallman and Sandra S. Ikuta, Circuit Judges, and Solomon Oliver, Jr.,[*] Chief District Judge.

Opinion by Judge Tallman

## SUMMARY[**]

### Criminal Law

The panel affirmed the district court's denial of a motion for reduction of sentence under 18 U.S.C. § 3582(c)(2) in light of retroactive Sentencing Guidelines Amendment 782, which raised from 1.5 to 4.5 kilograms the quantity of actual methamphetamine required to trigger the maximum base offense level.

The panel held that a district court in § 3582(c)(2) proceedings may make supplemental findings of drug quantity if they are necessary to determine the defendant's eligibility for a sentence reduction in light of a retroactive Guidelines amendment, but that in doing so, the district court may not make supplemental findings that are inconsistent with the findings made by the original sentencing court.

---

[*] The Honorable Solomon Oliver, Jr., Chief United States District Judge for the Northern District of Ohio, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

The panel held that a district court has broad discretion in how to adjudicate § 3582(c)(2) proceedings, including whether to hold a hearing when making supplemental findings of drug quantity. The panel rejected the defendant's argument that the district court was required to hold a contested hearing when making its supplemental findings. The panel explained that when the district court does not consider any evidence outside of the record at sentencing, an evidentiary hearing will not always be necessary. The panel rejected the defendant's contention that the district court was required to hold a hearing pursuant to U.S.S.G. § 6A1.3, which applies only in original sentencing proceedings, not in § 3582(c)(2) proceedings.

The panel rejected the defendant's contention that the sentencing court's finding that he distributed a total of 4.2 kilograms of methamphetamine was a specific finding of drug quantity that precluded the district court from engaging in any supplemental fact-finding. Because the original sentencing court did not make any findings regarding the amount of manufactured methamphetamine attributable to the defendant, it was necessary for the district court to make those supplemental findings in order to rule on the defendant's later motion. The panel held that the district court's conclusion that the defendant was responsible for at least 4.5 kilograms of actual methamphetamine was not clearly erroneous.

The panel held that the district court therefore did not err in concluding, without a hearing, that the defendant was ineligible for a sentence reduction under § 3582(c)(2) because Amendment 782 did not lower his applicable guideline range.

**COUNSEL**

Sean Riordan (argued) and Ann C. McClintock, Assistant Federal Defenders; Heather E. Williams, Federal Defender; Office of the Federal Public Defender, Sacramento, California; for Defendant-Appellant.

Kathleen A. Servatius (argued), Assistant United States Attorney; Camil A. Skipper, Appellate Chief; United States Attorney's Office, Fresno, California; for Plaintiff-Appellee.

**OPINION**

TALLMAN, Circuit Judge:

Defendant Raul Mercado-Moreno appeals the district court's denial of his motion for a sentence reduction under 18 U.S.C. § 3582(c)(2). Defendant led and managed a large-scale methamphetamine manufacturing and distribution enterprise in Eastern California from 2000 until 2004. In 2006, Defendant pled guilty to conspiring to manufacture and distribute 50 grams or more of methamphetamine. At sentencing, the court found that Defendant *distributed* 4.2 kilograms of actual methamphetamine during the course of the conspiracy. Because the threshold to trigger the maximum base offense level under the U.S. Sentencing Guidelines (USSG, or Guidelines) at the time of sentencing was 1.5 kilograms or more, the sentencing court properly applied the maximum base offense level without finding the precise quantity of actual methamphetamine that Defendant had *manufactured* during the course of the conspiracy. Defendant ultimately received 210 months of imprisonment.

After Guidelines Amendment 782 raised the threshold to trigger the maximum base offense level from 1.5 kilograms to 4.5 kilograms, Defendant moved for a sentence reduction under § 3582(c)(2) before a new district judge since the original sentencing judge had retired.   In determining Defendant's eligibility for a sentence reduction under § 3582(c)(2), the second district judge found that Defendant was responsible for at least 4.5 kilograms of actual methamphetamine during the course of the conspiracy and, thus, Amendment 782 did not lower his applicable guideline range.   Defendant's § 3582(c)(2) motion was denied.   On appeal, Defendant argues that § 3582(c)(2) does not authorize the district court to re-determine the drug quantity found at his original sentencing or to make new quantity findings without conducting a hearing.

As a matter of first impression, we hold that when deciding a § 3582(c)(2) motion, a district court may supplement the original sentencing court's quantity findings only when supplemental findings are necessary to determine the defendant's eligibility for a sentence reduction in light of a retroactive Guidelines amendment.   However, the district court may not make supplemental findings that are inconsistent with the findings made by the original sentencing court.   We also hold that a district court has broad discretion in how to adjudicate § 3582(c)(2) proceedings, including whether to hold a hearing when making supplemental findings of drug quantity.

There was no abuse of discretion here and we affirm the district court's denial of Defendant's motion for a sentence reduction under § 3582(c)(2).

I

A

We first set forth the general statutory framework for deciding motions under § 3582(c)(2).  Ordinarily, courts may not modify a term of imprisonment once it has been imposed.    18  U.S.C.  § 3582(c).    Section  3582(c)(2) recognizes a narrow exception to the general rule of sentencing finality.  It allows courts to modify a term of imprisonment to give defendants "the benefit of later enacted adjustments to the judgments reflected in the [Sentencing] Guidelines."  *Dillon v. United States*, 560 U.S. 817, 828 (2010).     The  Supreme  Court  has  emphasized  that § 3582(c)(2)  permits  "only  a  limited  adjustment  to  an otherwise  final  sentence  and  not  a  plenary  resentencing proceeding."  *Id.* at 826.

When deciding whether to reduce a defendant's sentence under § 3582(c)(2), courts conduct a "two-step inquiry."  *Id.* First, a court must determine the defendant's eligibility for a sentence reduction.  *Id.* at 827.  A defendant is eligible for a reduction only if (1) the defendant's term of imprisonment was based on a sentencing range that has subsequently been lowered by a retroactive amendment to the Guidelines, and (2) the reduction is consistent with USSG § 1B1.10, the policy statement that implements § 3582(c)(2).  *See id.* at 826–27; USSG § 1B1.10(a)(1) (2014).[1]

---

[1] Because  § 3582(c)(2)  motions  must  be  based  on  a  retroactive Guidelines amendment, § 1B1.10 functions as a gatekeeper, specifying which amendments apply retroactively and thus give rise to a sentence reduction motion under § 3582(c)(2). *See* USSG § 1B1.10(a)(2)(A), (d) (2014).  A district court must use the version of § 1B1.10 "that is in effect

To decide whether a retroactive Guidelines amendment lowers a defendant's sentencing range, the court must determine "the amended guideline range that would have been applicable to the defendant if the [relevant amendment] had been in effect at the time the defendant was sentenced." USSG § 1B1.10(b)(1) (2014). When making this determination, the court must substitute only the relevant amendment for the "corresponding guideline provisions that were applied when the defendant was sentenced" and must "leave all other guideline application decisions unaffected." *Id.*; *see Dillon*, 560 U.S. at 827. A defendant is ineligible for a sentence reduction if the relevant amendment "does not have the effect of lowering the defendant's applicable guideline range." USSG § 1B1.10(a)(2)(B) (2014).

If a defendant is eligible for a sentence reduction because the retroactive amendment lowers the defendant's applicable guideline range, the court proceeds to the second step of the inquiry. The court must determine whether, in its discretion, "the authorized reduction is warranted, either in whole or in part, according to the factors set forth in" 18 U.S.C. § 3553(a) and "under the particular circumstances of the case." *Dillon*, 560 U.S. at 826–27. "Because reference to § 3553(a) is appropriate only at the second step of this circumscribed inquiry, it cannot serve to transform the proceedings under § 3582(c)(2) into plenary resentencing proceedings." *Id.* at 827.

B

For federal drug offenses, a defendant's base offense level generally depends on the type and quantity of drugs

_____

on the date on which the court reduces the defendant's term of imprisonment [under] § 3582(c)(2)." *Id.*, cmt. n.8 (2014).

attributable to the defendant.  *See* USSG § 2D1.1(a)(5), (c) (2016).  The Drug Quantity Table in USSG § 2D1.1(c) specifies the base offense levels for quantity ranges of various drugs, with a maximum of 38 levels.  In 2014, Amendment 782 modified the Drug Quantity Table to reduce by two points the base offense levels for specific drug types and quantities.  *See* USSG supp. app. C, amend. 782 (Nov. 1, 2014).  At the same time, Amendment 788 made Amendment 782 retroactive for all previously sentenced defendants.[2]  *See id.*, supp. app. C, amend. 788 (Nov. 1, 2014); *see also id.* § 1B1.10(d) (2014) (specifying all retroactively applicable Guidelines amendments).

Amendment 782 increased the quantity of actual methamphetamine required to trigger the maximum base offense level from 1.5 kilograms to 4.5 kilograms.  *Id.* § 2D1.1(c)(1) (2014).  Because the maximum base offense level of 38 still applied to defendants responsible for at least 4.5 kilograms of actual methamphetamine, Amendment 782 had no effect on those defendants.  However, Amendment 782 reduced the base offense level to 36 for defendants who were responsible for at least 1.5 kilograms but less than 4.5 kilograms of actual methamphetamine.  *Id.* § 2D1.1(c)(2) (2014).

---

[2] Although district courts could hear § 3582(c)(2) motions based on Amendment 782, any sentence reductions based on Amendment 782 could not become effective until November 1, 2015, at the earliest. USSG § 1B1.10(e)(1) (2014); *see United States v. Navarro*, 800 F.3d 1104, 1107–08 (9th Cir. 2015).

II

A

Defendant led and managed a widespread methamphetamine manufacturing and distribution enterprise based in Stanislaus County in Eastern California from 2000 until 2004. Defendant was allegedly the kingpin who headed the drug trafficking organization. In 2005, the Government charged Defendant and several others with various drug offenses in a twenty-eight-count superseding indictment. In 2006, Defendant pled guilty, pursuant to a written plea agreement under Federal Rule of Criminal Procedure 11, to conspiring to manufacture and distribute 50 grams or more of methamphetamine in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 846.

As the factual basis for his guilty plea, Defendant stipulated in his plea agreement and under oath at his plea colloquy that he distributed more than 4,376.1 grams of actual methamphetamine in furtherance of the conspiracy. In addition, he stipulated that he managed other individuals who were involved in making methamphetamine and caused them to obtain pseudoephedrine pills used to make methamphetamine at a laboratory found by law enforcement on April 12, 2004, in Turlock, California. Specifically, Defendant stipulated in his written plea agreement that:

> Defendant will plead guilty because he is in fact guilty of the crime set forth in Count Two of the Fourth Superseding Indictment. The defendant also agrees that the following are the facts of this case . . . .
>
> Beginning at a time unknown but no later than April, 2000, and continuing to June 30,

2004, in the County of Stanislaus, State and Eastern District of California, and elsewhere, the defendant conspired with other individuals to make methamphetamine. The defendant knowingly assisted other individuals to extract pseudoephedrine in preparation for making methamphetamine in Stanislaus County in April 2000 and he knowingly possessed chemicals and equipment used to make methamphetamine in Washington State in December 2000.

Thereafter, in 2003 and 2004, the defendant supplied methamphetamine to individuals whom he knew would redistribute it. Specifically, on January 22, 2004, March 31, 2004, April 15, 2004, and May 26, 2004, the defendant distributed methamphetamine to other individuals. In all, the defendant distributed more than 4376.1 grams of methamphetamine in furtherance of this conspiracy. In addition, the defendant managed other individuals who were involved in making methamphetamine and caused them to obtain pseudoephedrine pills in March 2004, and make methamphetamine at a methamphetamine laboratory found by law enforcement on April 12, 2004 in Turlock, California.

At his plea colloquy, Defendant agreed that his plea agreement should be filed with the court and become part of the record of his case. Defendant also reaffirmed the factual basis for his plea under oath:

THE COURT: Now I want to confirm that there are facts that will support your [guilty] plea. Is it true that beginning at a time unknown, but not later than April of 2000, continuing to June 30th of 2004, in Stanislaus County, State and Eastern District of California and elsewhere, you conspired with other individuals to make methamphetamine, you knowingly assisted other individuals extract pseudoephedrine in preparation for making methamphetamine in Stanislaus County in April of 2000, and you knowingly possessed chemicals and equipment used to make methamphetamine from the state of Washington in December of 2000. Is all that true?

DEFENDANT: Yes.

THE COURT: Thereafter, in 2003 and 2004, you supplied methamphetamine to individuals whom you knew would be distributed. Specifically, on January 22, 2004, March 31, 2004, April 15, 2004, and May 26, 2004, you distributed methamphetamine to other individuals. In all, you distributed more than 4,376.1 grams of [actual] methamphetamine to carry out the conspiracy. In addition, you managed other individuals who were involved in making methamphetamine and caused them to obtain pseudoephedrine pills in March of 2004, and make methamphetamine at a laboratory found by law enforcement on April 12th, 2004, in Turlock, California; is all that true?

DEFENDANT: Yes.

Defendant further stipulated to the maximum base offense level of 38 under the Guidelines, which applied to defendants responsible for 1.5 kilograms or more of actual methamphetamine at the time of his sentencing. USSG § 2D1.1(c)(1) (2006). Defendant also stipulated to a two-level enhancement based on his role as "an organizer, leader, manager, or supervisor in [the] criminal activity." *Id.* § 3B1.1(c) (2006).[3]  And, he stipulated to a term of 210 months of imprisonment. In exchange, the Government agreed to dismiss the remaining charges against Defendant, to recommend a three-level reduction based upon his acceptance of responsibility under USSG § 3E1.1 (2006), and to recommend that he be sentenced "at the bottom of the applicable guideline range, but no less than 210 months."

During his sentencing proceedings, Defendant did not object to the facts asserted in the presentence investigation report (PSR), including that law enforcement had also seized an additional 40 pounds of methamphetamine in solution from the Turlock methamphetamine laboratory on April 12, 2004.[4]  At Defendant's sentencing hearing in January 2007, the sentencing court adopted the PSR and found that a "total 4.2 [*sic*] kilograms of methamphetamine was distributed by the defendant during the course of the conspiracy."

---

[3] To qualify under § 3B1.1, "the defendant must have been the organizer, leader, manager, or supervisor of one or more other participants" in a criminal activity or must have "exercised management responsibility over the property, assets, or activities of a criminal organization." USSG § 3B1.1, cmt. n.2 (2006).

[4] The PSR also described Defendant's involvement in other methamphetamine manufacturing activities in April 2000 and December 2000, but did not identify the drug quantities involved in those activities.

Defendant acknowledges that the sentencing court's finding of 4.2 kilograms, rather than 4.3 kilograms, was based on a typographical error in the PSR.  Specifically, the PSR mistakenly asserted:  "According to the plea agreement, [Defendant] was responsible for the distribution of 4,276.1 grams of methamphetamine during the course of the conspiracy," and, "[i]n this case, the defendant and the Government have agreed that a total of 4,276.1 (4.2 kilograms) grams of methamphetamine was distributed by the defendant during the course of the conspiracy."

Despite the court's reliance on the PSR's mistaken assertion, the factual issue as to whether Defendant distributed "more than 4.3 kilograms" or a "total of 4.2 kilograms" was immaterial at the time of sentencing, because the threshold required to trigger the maximum base offense level of 38 at that time was 1.5 kilograms.[5]  Because the sentencing court's *distribution* finding was more than sufficient to trigger the maximum base offense level, the court made no findings regarding the quantity of methamphetamine that Defendant *manufactured* during the course of the conspiracy.  Applying a two-level enhancement for Defendant's role in the offense and a three-level reduction for his acceptance of responsibility then yielded a corresponding sentencing range of 210 to 262 months.  *See* USSG ch. 5, pt. A (2006).  After considering the 18 U.S.C. § 3553(a) factors, the sentencing court imposed a term of 210 months' imprisonment, at the bottom

---

[5] Indeed, the Government observes that the sentencing court's error was not corrected because "the parties, the court, or the probation office either failed to notice [it] or believed it insignificant in light of the . . . minimum quantity necessary to support the [maximum] base offense level (1.5 kilograms of actual methamphetamine)."

of the guideline range, in accordance with Defendant's plea agreement and the parties' stipulations.

B

In June 2015, Defendant filed a § 3582(c)(2) motion for a sentence reduction, which was assigned to a different district judge.   Defendant argued that Amendment 782 lowered his sentencing range because it raised the threshold required to trigger the maximum base offense level from 1.5 to 4.5 kilograms and because "the amount of meth actual for which he was held responsible [was] 4.2 kilograms." Thus, he argued, his new base offense level under the revised Drug Quantity Table was 36.   In opposing Defendant's § 3582(c)(2) motion, the Government submitted a chemical analysis report regarding the materials seized from the Turlock methamphetamine laboratory on April 12, 2004. That report, which was not before the original sentencing court, conservatively estimated that the Turlock "large-scale methamphetamine manufacturing laboratory [was] capable of producing 40 pounds of [actual] methamphetamine."

The district court rejected Defendant's argument that the sentencing court's 4.2-kilogram distribution finding was a conclusive determination of the total drug quantity attributable to Defendant.   The district court cited the language in Defendant's plea agreement stating that "the defendant distributed *more than* 4376.1 grams." It also cited the additional quantities of methamphetamine not discussed at sentencing but noted in the PSR, including the 40 pounds of methamphetamine in solution that was seized from the Turlock laboratory on April 12, 2004.

The district court then considered the Government's chemical analysis report, noting that 40 pounds of actual

methamphetamine amounted to roughly 18 kilograms.[6]  The district court found that, "[c]onsidering the conservative estimate that approximately 18 kilograms of actual methamphetamine could have been produced with the methamphetamine solution found at the methamphetamine laboratory discovered on April 12, 2004, and that the defendant admitted involvement with that facility, the drug quantity attributable to defendant exceeds 4.5 kilograms of methamphetamine."  Because Amendment 782 did not alter Defendant's applicable sentencing range, the district court held that he was ineligible for a sentence reduction under § 3582(c)(2).  The court thus denied Defendant's motion at the first step of the § 3582(c)(2) inquiry without reaching the discretionary second step.  This appeal followed.

III

We have jurisdiction under 28 U.S.C. § 1291 to review the denial of a § 3582(c)(2) motion for a sentence reduction. *United States v. Chaney*, 581 F.3d 1123, 1125 (9th Cir. 2009).  Section 3582(c)(2) relief is available to defendants who plead guilty under a plea agreement recommending a particular sentence as a condition of the plea if "the district court's 'decision to accept the plea and impose the recommended sentence' was 'based on the Guidelines.'" *United States v. Davis*, 825 F.3d 1014, 1027 (9th Cir. 2016) (en banc) (quoting *Freeman v. United States*, 564 U.S. 522, 534 (2011) (plurality opinion)).  We review de novo "whether a district court has jurisdiction to modify a sentence under 18 U.S.C. § 3582(c)(2)." *United States v. Spears*, 824 F.3d 908, 912 (9th Cir. 2016).  And we review de novo whether a district court deciding a § 3582(c)(2)

---

[6] USSG § 2D1.1, cmt. n.8(D) (2014) (converting 1 pound to 0.4536 kilograms).

motion may supplement the original sentencing court's drug quantity findings.  *See United States v. Paulk*, 569 F.3d 1094, 1095 (9th Cir. 2009) (per curiam).  If so, we review the district court's denial of the § 3582(c)(2) motion for abuse of discretion.  *Chaney*, 581 F.3d at 1125.

In reviewing for abuse of discretion, we may affirm the "district court on any ground supported by the record, even if the district court's reasoning differs from our own." *Preminger v. Principi*, 422 F.3d 815, 820 (9th Cir. 2005). We will reverse only if the district court relied on an erroneous legal standard or clearly erroneous findings of fact.  *Chaney*, 581 F.3d at 1125.  "We review factual findings, including a determination of the quantity of drugs involved in an offense, for clear error."  *United States v. Dallman*, 533 F.3d 755, 760 (9th Cir. 2008).  Under the clear error standard of review, if "the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573–74 (1985).

IV

Defendant's eligibility for a sentence reduction under § 3582(c)(2) turns on whether he was responsible for a total of 4.5 kilograms or more of actual methamphetamine during the course of the conspiracy.  If so, he still receives the maximum base offense level and Amendment 782 does not alter his sentencing range—thus precluding him from a reduction under § 3582(c)(2).

Defendant challenges the district court's denial of his § 3582(c)(2) motion on two grounds.  First, he asserts that § 3582(c)(2) does not allow the district court to re-determine the drug quantity found at his original sentencing.  He argues that the sentencing court specifically found that he was

responsible for 4.2 kilograms and the district court's decision contradicts that finding. Second, Defendant contends that the district court erred by engaging in supplemental fact-finding on drug quantity without a hearing.

We hold that a district court in § 3582(c)(2) proceedings may make supplemental findings of drug quantity if they are necessary to determine the defendant's eligibility for a sentence reduction in light of a retroactive Guidelines amendment. In doing so, the district court may not make supplemental findings that are inconsistent with the findings made by the original sentencing court. We also hold that a district court has broad discretion in how to adjudicate § 3582(c)(2) proceedings, including whether to hold a hearing when making supplemental findings of drug quantity.

A

To begin, § 3582(c)(2) instructs courts to determine whether a retroactive Guidelines amendment lowers a defendant's sentencing range. In the case of an amendment to the Drug Quantity Table, such as Amendment 782, this analysis hinges on whether the drug quantity attributable to the defendant either exceeds or falls below the revised quantity threshold. That inquiry is straightforward where, for example, the sentencing court found the precise total quantity of drugs (such as "X kilograms") attributable to the defendant. However, a sentencing court's quantity finding may sometimes be ambiguous or incomplete when viewed in the context of a later Guidelines amendment. For instance, the sentencing court may have attributed a range of quantities (such as "at least X kilograms") to the defendant. Or, as here, the sentencing court may have quantified only part of the amount for which Defendant was responsible,

without making a specific finding as to the rest, because that partial amount supported the maximum base offense level at the time of sentencing. Typically, in those cases, neither the court nor the parties anticipate a future Guidelines amendment that will move the line and require further fact-finding to determine the defendant's eligibility for a sentence reduction under § 3582(c)(2).

In those cases where a sentencing court's quantity finding is ambiguous or incomplete, a district court may need to identify the quantity attributable to the defendant with more precision to compare it against the revised drug quantity threshold under the relevant Guidelines amendment. The Supreme Court indicated that such fact-finding was permissible in *Dillon*. *See* 560 U.S. at 828–29 (stating that "facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment"). We thus join our sister circuits in recognizing that § 3582(c)(2)'s eligibility inquiry may require a district court to supplement the original sentencing court's drug quantity findings to "determine the amended guideline range that would have been applicable" to the defendant in light of a retroactive Guidelines amendment. USSG § 1B1.10(b)(1) (2014). The Seventh Circuit, for example, held that

> nothing prevents the court from making new findings that are supported by the record and not inconsistent with the findings made in the original sentencing determination. Indeed, new findings may be necessary where, as here, the retroactive amendment to the guidelines altered the relevant drug-quantity thresholds for determining the defendant's base offense level.

*United States v. Hall*, 600 F.3d 872, 876 (7th Cir. 2010).  The Eleventh Circuit also elaborated on the power of courts to make additional findings consistent with earlier ones:  "[If] a district court found during the original sentence proceeding that 'at least X kilograms' were attributable to the defendant, it may not find . . . that 'less than X kilograms' were attributable; it may, however, find attributable X kilograms, or 2X kilograms, or 10X kilograms."  *United States v. Hamilton*, 715 F.3d 328, 340 (11th Cir. 2013).

Other courts of appeals have reached the same conclusion.  *See, e.g.*, *United States v. Peters*, 843 F.3d 572, 577 (4th Cir. 2016) ("[D]istrict courts may make additional findings on the drug quantities attributable to defendants in § 3582(c)(2) proceedings.  Such findings must be supported by the record and consistent with earlier findings."), *cert. denied*, No. 16-8336 (U.S. June 19, 2017); *United States v. Wyche*, 741 F.3d 1284, 1293 (D.C. Cir. 2014) ("If the original sentencing court failed to make a specific drug-quantity calculation, the resentencing court may have to make its own quantity finding in order to determine the defendant's guideline range."); *United States v. Rios*, 765 F.3d 133, 138 (2d Cir. 2014) (observing that district courts may make "new findings of fact when ruling on a § 3582(c)(2) motion" because "new findings are often necessary where . . . retroactive amendments have altered the relevant drug-quantity thresholds for determining a defendant's base offense level" (citations omitted)); *United States v. Battle*, 706 F.3d 1313, 1319 (10th Cir. 2013) ("[A] district court may look to its previous findings, including any portions of a PSR adopted by the sentencing court, to make supplemental calculations of drug quantity . . . if such calculations are necessary to determine the amended guideline range that would have been applicable in light of a retroactive Guideline amendment." (quotation omitted));

*United States v. Moore*, 706 F.3d 926, 929 (8th Cir. 2013) ("[Section] 1B1.10(b)(1) not only permits, but may often require, district courts to make findings necessary to resolve § 3582(c)(2) motions."); *United States v. Moore*, 582 F.3d 641, 646 (6th Cir. 2009) (holding that, where the original drug quantity determination is not specific enough for the district court to determine whether a defendant is eligible for a sentence reduction under § 3582(c)(2), the court may make new findings of fact that are supported by the record and consistent with the findings made in the original sentencing proceedings).

"[A]bsent a strong reason to do so, we will not create a direct conflict with other circuits." *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1374 (9th Cir. 1987). We agree with our sister circuits and join them in holding that district courts in § 3582(c)(2) proceedings may make additional findings on the drug quantity attributable to a defendant if those findings are necessary to determine the defendant's eligibility for a sentence reduction. Such findings must be supported by the record and cannot contradict any findings made by the original sentencing court.

### B

We also reject Defendant's argument that the district court was required to hold a contested hearing when making its supplemental findings. A district court has broad discretion in how to adjudicate § 3582(c)(2) proceedings, including whether to hold a hearing when making supplemental determinations of drug quantity. *See Rios*, 765 F.3d at 138; *e.g., United States v. Hernandez*, 645 F.3d 709, 712–13 (5th Cir. 2011) (holding that "the district court did not abuse its discretion in refusing to . . . grant an evidentiary hearing to decide the amount of crack for which Hernandez was responsible" in light of a retroactive

amendment modifying the guideline ranges for crack cocaine offenses), *cited with approval in Spears*, 824 F.3d at 913. When the district court does not consider any evidence outside of the record at sentencing, an evidentiary hearing will not always be necessary.

In addition, we reject Defendant's contention that the district court was required to hold a hearing pursuant to USSG § 6A1.3. Section 6A1.3 applies only in original sentencing proceedings, and not in § 3582(c)(2) proceedings. Section 6A1.3 provides that "[w]hen any factor important to the *sentencing* determination is reasonably in dispute, . . . the court shall resolve [it] at a *sentencing* hearing in accordance with [Federal Rule of Criminal Procedure 32(i)]." USSG § 6A1.3(a)–(b) (2016) (emphasis added). Rule 32 governs the procedures for a defendant's original sentencing, and Rule 32(i) sets forth the procedures that a sentencing judge must follow before imposing the defendant's original sentence. *See* Fed. R. Crim. P. 32(i)(4)(B), (C).**[7]**

District courts ruling on § 3582(c)(2) motions need not conduct sentencing hearings under Rule 32 because § 3582(c)(2) proceedings are not plenary resentencing

---

**[7]** The Guidelines' commentary further reveals that § 6A1.3 applies only in original sentencing proceedings. *See* USSG ch. 6, pt. A, intro. cmt. ("This Part [containing § 6A1.3] sets forth the procedures for establishing the facts upon which the *sentence* will be based." (emphasis added)); *id.* § 6A1.3, cmt. ("[L]engthy *sentencing* hearings seldom should be necessary"; "In determining the relevant facts, *sentencing* judges are not restricted to information that would be admissible at trial"; "[L]ower evidentiary standard at *sentencing* permits *sentencing* court's consideration of acquitted conduct" (emphasis added)); *see also Stinson v. United States*, 508 U.S. 36, 38 (1993) ("[C]ommentary in the Guidelines Manual that interprets or explains a guideline is [generally] authoritative.").

proceedings. "By its terms, § 3582(c)(2) does not authorize a sentencing or resentencing proceeding. Instead, it provides for the modification of a term of imprisonment by giving courts the power to reduce an otherwise final sentence in circumstances specified by the Commission." *Dillon*, 560 U.S. at 825 (quotation marks and alterations omitted). The Supreme Court has emphasized that § 3582(c)(2) "authorize[s] only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Id.* at 826. "*Taking the original sentence as given*, any facts found by a judge at a § 3582(c)(2) proceeding do not serve to increase the prescribed range of punishment; instead, they affect only the judge's exercise of discretion within that range." *Id.* at 828 (emphasis added).

Unlike in § 3582(c)(2) proceedings, factual findings made at a sentencing proceeding may serve to increase the defendant's prescribed range of punishment. It thus makes sense that § 6A1.3 requires sentencing courts to resolve any disputed factors important to the sentencing determination "at a sentencing hearing in accordance with Rule 32(i)." USSG § 6A1.3(b). Here, Defendant's § 3582(c)(2) motion to reduce his original sentence sought "only a limited adjustment to an otherwise final sentence and not a plenary resentencing proceeding." *Dillon*, 560 U.S. at 825. Thus, § 6A1.3 did not require the district court to conduct a Rule 32(i) sentencing hearing to decide his motion.

V

We turn now to whether the district court abused its discretion in denying Defendant's § 3582(c)(2) motion by improperly engaging in supplemental fact-finding or by resting its decision on a clearly erroneous finding of fact. *See Chaney*, 581 F.3d at 1125.

## A

We begin with the framework for making supplemental findings of drug quantity in § 3582(c)(2) proceedings. Under the first step of the *Dillon* analysis, a district court must determine a defendant's eligibility for a sentence reduction by evaluating whether the defendant's applicable guideline range would have been lower if the relevant Guidelines amendment were in effect at the time he was sentenced. *See Dillon*, 560 U.S. at 827; USSG § 1B1.10(a)(2)(B), (b) (2014). If the record reflects that the sentencing court made a specific finding regarding the total quantity of drugs for which the defendant was responsible, or if the defendant admitted to a specific total quantity, then the district court must use that quantity and determine whether applying the retroactive amendment would lower the defendant's guideline range. If so, the defendant is eligible for a sentence reduction and the court proceeds to the second step of the *Dillon* analysis.

But, if the sentencing court's quantity finding was ambiguous or incomplete, the district court may need to make additional findings of drug quantity to determine the defendant's eligibility for a sentence reduction. To do so, the district court must determine whether the defendant is more likely than not responsible for the new quantity threshold under the retroactive Guidelines amendment. *See United States v. Howard*, 894 F.2d 1085, 1090 (9th Cir. 1990) (adopting the preponderance of the evidence standard of proof for Guidelines issues); *e.g.*, *United States v. Valentine*, 694 F.3d 665, 674 n.4 (6th Cir. 2012) ("[I]t is sufficient for the [district] court to consider the amount of the new threshold in the retroactive amendment, here 4.5 kilograms, and determine whether a preponderance of

the evidence in the record indicates that the defendant is [more likely than not] responsible for that amount.").

The district court may consider, for example, "the trial transcript, the sentencing transcript, and the portions of the presentence report that the defendant admitted to or the sentencing court adopted." *Valentine*, 694 F.3d at 670. And it may accept as true any facts in a PSR that the defendant did not object to at the time of sentencing. *See United States v. Scrivner*, 114 F.3d 964, 967 (9th Cir. 1997) ("[It] is well settled that factual findings in a PSR can be accepted as accurate . . . if a defendant failed to raise objections at the time of sentencing."); *United States v. Deninno*, 29 F.3d 572, 580 (10th Cir. 1994) ("Failure to object to a fact in a presentence report, or failure to object at the hearing, acts as an admission of fact."). However, the district court's supplemental findings may not be inconsistent with any factual determinations made by the original sentencing court. *See, e.g.*, *Rios*, 765 F.3d at 138; *United States v. Adams*, 104 F.3d 1028, 1031 (8th Cir. 1997) (holding that it is implicit in § 3582(c)(2) proceedings "that the district court is to leave all of its previous factual decisions intact when deciding whether to apply a guideline retroactively").

Lastly, the district court is not required to find a specific quantity of drugs. For instance, where materials such as waste water from an illicit laboratory used to manufacture a controlled substance "cannot readily be separated from the mixture or substance that appropriately is counted in the Drug Quantity Table, the court may use any reasonable method to *approximate* the weight of the . . . substance to be counted." USSG § 2D1.1, cmt. n.1 (2014) (emphasis added). And circumstantial evidence may be sufficient to determine the weight of a useable controlled substance by a preponderance of the evidence. *See United States v.*

*Dudden*, 65 F.3d 1461, 1471 (9th Cir. 1995). Thus, if the exact quantity of drugs involved is unclear or cannot be easily determined, the district court may approximate that quantity based on circumstantial evidence, making sure to err on the side of caution, and hold the defendant accountable for the quantity that he is more likely than not actually responsible for. *Valentine*, 694 F.3d at 672, 674 n.6.

B

Applying this analysis to the present case, we first reject Defendant's contention that the sentencing court's finding that he distributed a total of 4.2 kilograms of methamphetamine was a specific finding of drug quantity that precluded the district court from engaging in any supplemental fact-finding.

Defendant stipulated in his Rule 11 plea agreement and at his plea colloquy that he distributed more than 4,376.1 grams of actual methamphetamine, not a *total* of 4.2 kilograms. He also agreed that his plea agreement should be filed with the sentencing court and become part of the record of his case. In enacting Rule 11, Congress "evidenced its intent to require a district court to sentence a defendant in accordance with the plea agreement." *United States v. Mukai*, 26 F.3d 953, 956 (9th Cir. 1994) (citation omitted). As Defendant acknowledges, the sentencing court's finding of 4.2 kilograms, rather than 4.3 kilograms, was due to a transpositional error in the PSR upon which the sentencing court mistakenly relied. At oral argument, Defendant conceded that 4.3 kilograms would have been the more accurate figure. We thus analyze the district court's decision using the more accurate, 4.3-kilogram figure.

In addition to the 4.3 kilograms of actual methamphetamine Defendant distributed, he stipulated that

he "managed other individuals who were involved in making methamphetamine and caused them to obtain pseudoephedrine pills [used to] make methamphetamine at a methamphetamine laboratory found by law enforcement on April 12, 2004 in Turlock, California." Defendant did not object at sentencing to the PSR's assertion that law enforcement seized approximately 40 pounds of methamphetamine in solution from a methamphetamine laboratory on April 12, 2004. Based on Defendant's failure to object, that factual assertion is accepted as true. *See Scrivner*, 114 F.3d at 967.[8] Further, it is undisputed that the 4.3 kilograms of actual methamphetamine that Defendant distributed did not involve the 40 pounds of methamphetamine in solution that was seized from the Turlock laboratory on April 12, 2004.

Because the Guidelines at the time of sentencing required only a finding of 1.5 kilograms to trigger the maximum base offense level, the sentencing court only determined the quantity of actual methamphetamine that Defendant had distributed. It made no findings regarding the quantity of actual methamphetamine that Defendant was responsible for manufacturing or conspiring to manufacture during the course of the conspiracy. Amendment 782 would lower Defendant's base offense level, and thus his applicable

---

[8] To the extent Defendant challenges the PSR's factual assertions, we reject those arguments. "[A] defendant waives a challenge to a presentence report by failing to object in the district court." *United States v. Visman*, 919 F.2d 1390, 1394 (9th Cir. 1990); *see, e.g.*, *United States v. Bauer*, 84 F.3d 1549, 1563 (9th Cir. 1996) (rejecting the defendant's argument that "the amount of marijuana attributed to him in the presentence report was not supported by the facts" because defendant failed to challenge the report in the district court); *Deninno*, 29 F.3d at 580 ("[T]he burden of alleging factual inaccuracies of the presentence report is on the defendant.").

guideline range, only if the total quantity of actual methamphetamine attributable to him was less than 4.5 kilograms. Thus, it would have been impossible for the district court to determine Defendant's eligibility for a sentence reduction without addressing the quantity of methamphetamine that Defendant was responsible for manufacturing during the course of the conspiracy. *See* USSG § 1B1.10(b)(1) (2014). Because the original sentencing court did not make any findings regarding the amount of manufactured methamphetamine attributable to Defendant, it was necessary for the district court to make those supplemental findings in order to rule on Defendant's later motion.

## C

Having concluded that further fact-finding was not only permitted but required in order to resolve Defendant's motion, we turn now to our review of the district court's factual findings.[9] "We review factual findings, including a determination of the quantity of drugs involved in an

---

[9] Preliminarily, we also reject Defendant's contention that the Government cannot argue, and the district court cannot find, an amount higher than 4.2 kilograms because the government waived a higher finding by failing to object to the quantity found at the original sentencing. "[W]aiver is the intentional relinquishment or abandonment of a known right." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quotation marks omitted). It does not apply where, as here, the Government did not have an incentive to prove anything more than 1.5 kilograms at the original sentencing and could not have knowingly relinquished the unforeseeable necessity to argue a higher amount later on. *See, e.g.*, *Wyche*, 741 F.3d at 1294 ("[T]he Government was not required to prove—and had no reason to argue—that Wyche was responsible for any amount of cocaine base *over* 500 grams. Under these circumstances, . . . the Government is free to challenge drug quantity."); *Valentine*, 694 F.3d at 674 n.5 (rejecting similar argument).

offense, for clear error." *Dallman*, 533 F.3d at 760. A factual finding is clearly erroneous when "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson*, 470 U.S. at 753 (citation omitted). If "the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it." *Id.* at 573–74. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Id.* "This is so even when the district court's findings [are based on] physical or documentary evidence or inferences from other facts." *Id.*

1

We first reject Defendant's argument that the 40 pounds of methamphetamine in solution seized from the Turlock laboratory did not constitute "relevant conduct" and thus may not be considered in calculating his base offense level. "Types and quantities of drugs not specified in the count of conviction may be considered in determining the offense level." USSG § 2D1.1, cmt. n.5 (2014). To determine a defendant's base offense level when the Guidelines specify more than one, courts consider the defendant's relevant conduct. *See id.* § 1B1.3(a) (2014). Relevant conduct includes:

> (A) all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant; and (B) in the case of a jointly undertaken criminal activity (a criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy), all reasonably foreseeable acts and omissions of

others in furtherance of the jointly undertaken criminal activity,

that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

*Id.* § 1B1.3(a)(1) (2014).

"With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook." *Id.* § 1B1.3, cmt. n.2 (2014). However, the requirement of reasonable foreseeability "does not apply to conduct that the defendant personally . . . counsels, commands, induces, procures, or willfully causes." *Id.*

According to Defendant's plea agreement to conspiracy to manufacture and distribute methamphetamine, and the stipulations he made under oath at his plea colloquy, the methamphetamine manufactured at the Turlock laboratory was "contraband with which [Defendant] was directly involved," and the manufacture of that methamphetamine was conduct that Defendant personally "counseled, commanded, induced, procured, or willfully caused." *Id.* § 1B1.3(a)(1)(A), cmt. n.2 (2014); *see also Wyche*, 741 F.3d at 1292–93 ("If the defendant plays a managerial role in a drug conspiracy, coordinates drug distribution with other managers of the conspiracy and shares in the conspiracy's

profits, he may be held responsible for the entire drug quantity attributable to the conspiracy during the time he was a participant."). And if "the offense involved both a substantive drug offense and [a] conspiracy (*e.g.*, sale of five grams of heroin and [a conspiracy] to sell an additional ten grams of heroin), the total quantity involved shall be aggregated to determine the scale of the offense." USSG § 2D1.1, cmt. n.5 (2014).

Thus, the amount of actual methamphetamine manufactured at the Turlock laboratory is relevant conduct that must be considered in determining whether Defendant is eligible for a sentence reduction in light of Amendment 782.

2

Finally, we turn to the district court's supplemental finding that Defendant was responsible for at least 4.5 kilograms of actual methamphetamine during the course of the conspiracy. Defendant argues that the district court erred in relying in part on a chemical analysis report that was not part of the record at sentencing. Even assuming, without deciding, that the district court erred by considering materials beyond those that were before the original sentencing court, we hold that any error was harmless because 40 pounds of methamphetamine in solution was seized from the Turlock laboratory, and the district court needed to find only that this solution contained 200 grams of actual methamphetamine to meet the threshold for the maximum base offense level under Amendment 782.[10]

---

[10] In light of this conclusion, we do not decide if the district court's broad discretion in holding an evidentiary hearing may be more limited

In light of the record viewed in its entirety, it was not a close call for the district court to conclude that Defendant, in addition to distributing 4.3 kilograms of actual methamphetamine, more likely than not also manufactured another 200 grams of actual methamphetamine during the course of the conspiracy. Defendant headed a criminal enterprise that manufactured and sold high volumes of actual methamphetamine for a number of years.[11] Based on Defendant's leadership role in this high-volume methamphetamine manufacturing and distribution conspiracy, and in light of the 40 pounds of methamphetamine in solution seized from the Turlock laboratory, the district court's finding was not clearly erroneous.

Although the record at sentencing did not contain a chemical analysis report of the methamphetamine in solution seized from the Turlock laboratory, the district court may rely on circumstantial evidence to approximate whether that solution could more likely than not produce 200 grams of useable actual methamphetamine. *See Dudden*, 65 F.3d at 1471; *Valentine*, 694 F.3d at 672 ("Where the exact amount of drugs involved is unclear, a court may approximate the quantity of drugs based on circumstantial evidence, making sure to err on the side of caution." (quotation omitted)). The

when it considers evidence outside of the original sentencing record which would have made a difference in the outcome.

[11] The PSR noted that Defendant was "involved in the drug business for many years," and "not only was he involved with distributing narcotics in the state of California, he was also involved in the drug trade in the state of Washington. . . . It appears that once the defendant was caught in Washington, he left that area and moved the operation down to California." Defendant did not object to these factual findings at sentencing.

court may also "employ alternative means for determining the base offense level as allowed by the Guidelines." *United States v. Sprague*, 135 F.3d 1301, 1306–07 (9th Cir. 1998). "For example, the court may approximate the quantity of [the] controlled substance by using its best estimate of the production capability of the laboratory where 'the amount seized does not reflect the scale of the offense.'" *Id.* at 1307 (citation omitted); *see* USSG § 2D1.1, cmt. n.5 (2014). "A court's approximation of the amount of drugs involved in a particular case is not clearly erroneous if supported by competent evidence in the record." *Valentine*, 694 F.3d at 672–73 (quotation omitted).

Here, the 40 pounds of methamphetamine in solution seized from the Turlock laboratory constituted over 18,000 grams of methamphetamine in solution. *See* USSG § 2D1.1, cmt. n.8(D) (2014) (converting 1 pound to 453.6 grams). Even if that amount were a weak solution, it was not clearly erroneous to approximate that 18,000 grams of a solution containing methamphetamine could more likely than not produce at least 200 (or 300) grams of useable actual methamphetamine. The district court's conservative finding was supported by competent evidence in the record and was "plausible in light of the record viewed in its entirety." *Anderson*, 470 U.S. at 574; *see Hernandez*, 645 F.3d at 713 n.3 ("Hernandez has not claimed in this appeal that based on the record and the sources cited by the PSR it could not reasonably be concluded that he was responsible for more than 4.5 kg of crack. Under *Dillon,* that is where our inquiry ends.").

Thus, the district court's conclusion that Defendant was responsible for at least 4.5 kilograms of actual methamphetamine was not clearly erroneous. Nor was that determination contrary to any findings made by the original

sentencing court, which addressed only the amount that Defendant had distributed during the course of the conspiracy, and not the amount that he also manufactured.

We hold that the district court did not abuse its discretion in concluding, without a hearing, that Defendant was ineligible for a sentence reduction under § 3582(c)(2) because Amendment 782 did not lower his applicable guideline range.  *See* USSG § 1B1.10(a)(2)(B) (2014).**[12]**

**AFFIRMED.**

---

**[12]** We note that, even if Defendant were eligible for a sentence reduction because Amendment 782 lowered his applicable guideline range, the district court still had discretion—at the second step of the *Dillon* analysis—to decline to reduce his sentence based on the applicable § 3553(a) factors and the circumstances of the case.  *See Dillon*, 560 U.S. at 826–27.