The Trustee responds that "the QA Fee, if an excise tax, is clearly and unequivocally not 'on a transaction[.]' " (Dkt. 15, Appellee's Br. at 15) (capitalization omitted). Because "[s]killed nursing facilities provide long-term care to their patients, and do[ ] not engage in one-time or discrete transactions *829 with their patients[,]" the Trustee asserts that "QA Fees are not assessed on any discrete activity or transaction involving any particular patient, care or service." (Id. at 19). According to the Trustee, DHS "wants to squeeze the QA Fee into an excise tax 'on a transaction,' but fails to identify what the transaction is." (Id. ). The Trustee's assertions are unpersuasive.
During the hearing on the claim objection following remand, DHS's counsel explained that QA Fees were imposed on a "per bed"[5] basis:
MR. WANG [DHS's counsel]: ... the QA fee is charged on a per bed at a facility - occupied bed at a facility in a month.
THE COURT: So it's -- and it's per bed per month?
MR. WANG: Per bed per month.
THE COURT: Per month. Okay.
MR. WANG: Okay.
THE COURT: And that doesn't vary?
MR. WANG: That varies throughout the month. So -- so that formula doesn't vary but the actual amount varies.
THE COURT: Okay.
MR. WANG: So it -- for example, at a facility that has 50 beds for the month of January 2017 perhaps 50 beds get occupied. In February 20 beds gets occupied. So that multiplier is multiplied by the number of beds occupied for the month.
THE COURT: Occupied. Okay.
(BK Dkt. 519, January 4, 2017, Hearing Tr. at 23-24).
DHS's characterization of QA Fees as being imposed on a "per bed, per patient day" basis was essentially uncontested. Indeed, the Trustee agreed with this characterization. (See BK Dkt. 480, Trustee's Opening Supp. Br. at 4) (describing QA Fees as "recurring monthly charges which are based on a facility specific annual rate, multiplied by the number of occupied beds/residents per day each month"). Nonetheless, the bankruptcy court found that QA Fees were not levied "on a transaction," reasoning as follows:
QA Fees are not based on the number of meals, beds, changes of clothing, or any other service provided to residents. QA Fees are not assessed when a new resident enters a facility. Rather, the terms of the legislation provide - and DHS's proof of claim makes clear - that QA Fees are recurring fees based on a skilled nursing facility's net revenue.
(BK Dkt. 491, Bankruptcy Court's Order of August 24, 2017, at 12) (emphasis added).
The court respectfully disagrees with bankruptcy court's legal interpretation of the relevant California law. See Marsh v. J. Alexander's LLC, 905 F.3d 610, 618 (9th Cir. 2018) (en banc ). The relevant California statute states that "[t]he amount of the uniform quality assurance fee to be assessed per resident day shall be determined based on the aggregate net revenue of skilled nursing facilities subject to the fee [.]" Cal. Health & Safety Code § 1324.21(b) (emphasis added). As both DHS and the Trustee agreed that the QA Fee was calculated based on the number of beds per day provided to a nursing facility's residents, (see BK Dkt. 480, Trustee's Opening Supp. Br. at 4), the bankruptcy court erred in concluding that *830 "QA Fees are not based on the number of ... beds ... provided to residents."[6] As DHS correctly notes, the "QA Fee ... is a daily per bed charge" that is highly "analogous to the bed tax imposed by the hospitality industry[ ] at hotels and motels." (Dkt. 12, DHS Opening Br. at 14).
Moreover, the court's conclusion is strongly supported by the First Circuit's decision in Boston Regional v. Massachusetts Div. of Health, 365 F.3d 51 (1st Cir. 2004), which, as DHS noted, is a factually "indistinguishable" case involving similar issues of law and expounded on those similarities. (See BK Dkt. 410, Creditor California Department of Health Care Service's Opposition[ ] at 10; BK Dkt. 519, January 4, 2017, Hearing Tr. at 28, 42-43). While Boston Regional is not binding on this court or the bankruptcy court, it is highly persuasive authority for a number of reasons. It concerned "materially indistinguishable" facts - a state claim for unpaid health care provider taxes imposed to finance the state's share of Medicaid costs - and resolved a virtually identical question of law. See Boston Regional, 365 F.3d at 53 ("At issue in this appeal is whether amounts owing by a debtor hospital under Massachusetts general law, chapter 118G, section 18, to a state fund known as the Commonwealth's Uncompensated Care Pool are properly considered to be 'excise taxes' enjoying priority in bankruptcy under 11 U.S.C. § 507(a)(8)(e)."). The QA Fee at issue here[7] and the Massachusetts tax[8] in Boston Regional were both enacted as part of a state plan to receive federal matching funds (or federal financial participation) pursuant to Title XIX of the Social Security Act, 42 U.S.C. §§ 1396, et seq. (also known as the Medicaid Act). The First Circuit resolved the question of priority treatment of the state's claim under the Bankruptcy Code by applying the standard set forth in the Ninth Circuit's decision in In re Lorber Indus. of Cal., Inc., 675 F.2d 1062, 1066 (9th Cir. 1982). See Boston Regional, 365 F.3d at 58. In other words, having conducted a de novo review of the bankruptcy court's legal determination, the court is persuaded that the approach set forth in Boston Regional is the correct one.[9] In short, DHS's QA Fee claim should have *831 been allowed as a priority unsecured claim pursuant to 11 U.S.C. § 507(a)(8).
CONCLUSION
Based on the foregoing, IT IS ORDERED THAT:
1. The Bankruptcy Court's Order of August 24, 2017, (Bankruptcy Document No. 491) is reversed , and the matter is remanded with instructions to allow DHS's proof of claim for Quality Assurance Fees in the amount of $ 432,250.01 as a priority unsecured claim pursuant to 11 U.S.C. § 507(a)(8).
2. Judgment shall be entered accordingly.

Put differently, it is the aggregate monthly sum of patient beds occupied on a daily basis. For instance, assume that for each of the four weeks in February there are 11 occupied patient beds on Monday, 12 on Tuesday, 13 on Wednesday, 14 on Thursday, 15 on Friday, 16 on Saturday, and 17 on Sunday. The aggregate weekly total of "patient bed census days" would be 98 (11 + 12 + 13 + 14 + 15 + 16 + 17 = 98). Multiplied by four, the total number of transactions in February would be 392.

For the same reasons, the court finds unavailing the Trustee's argument that DHS failed to identify the discreet transaction involved. (See Dkt. 15, Appellee's Br. at 19; BK Dkt. 491, Bankruptcy Court's Order of August 24, 2017, at 12).

See Cal. Health & Safety Code § 1324.27 ("The department shall request approval from the federal Centers for Medicare and Medicaid Services for the implementation of this article.") (referring to §§ 1324.20 to 1324.30, Article 7.6, titled "Skilled Nursing Facility Quality Assurance Fee"); Cal. Welf. & Inst. Code § 14126.022(o) ("The department shall seek necessary approvals from the federal Centers for Medicare and Medicaid Services to implement this section. The department shall implement this section only in a manner that is consistent with federal Medicaid law and regulations, and only to the extent that approval is obtained from the federal Centers for Medicare and Medicaid Services and federal financial participation is available.").

See Mass. Gen. Laws ch. 118G, § 18 (effective through June 30, 2001) ("The Uncompensated Care Trust Fund shall consist of all amounts paid by acute hospitals and surcharge payors for the purposes of the uncompensated care pool pursuant to this section and section 18A[.]")

The court is cognizant of the notion that,"[a]bsent a strong reason to do so, [the Ninth Circuit] will not create a direct conflict with other circuits." United States v. Mercado-Moreno, 869 F.3d 942, 955 (9th Cir. 2017) (internal quotation marks omitted). See, e.g., Fang Lin Ai v. United States, 809 F.3d 503, 507 (9th Cir. 2015) (noting the existence of persuasive authority from the Federal Circuit "in a materially indistinguishable case" and adopting the same disposition).